■ ESTATE OF CLARA SCHEUER, Deceased, et al., Respondents-Appellants, v CITY OF NEW YORK et al., Appellants-Respondents, and PARKCHESTER SOUTH CONDOMINIUMS, INC., et al., Respondents. ESTATE OF CLARA SCHEUER, Deceased, et al., Appellants-Respondents, v CITY OF NEW YORK et al., Respondents-Appellants. [780 NYS2d 597]—

Orders, Supreme Court, New York County (Marcy S. Friedman, J.), entered April 3, 2002 and February 27, 2003, which, in an action arising out of an allegedly negligent search for plaintiffs' decedent, partially granted motions for summary judgment by defendants City of New York and the New York City Police Department (collectively to be referred to as the NYPD), Parkchester Management Corp., Parkchester Apartment Corp. and Supervisory Management Corp. (collectively to be referred to as Management), and Parkchester South Condominiums (Condominiums), unanimously modified, on the law, to dismiss the action against the city defendants in its entirety, and otherwise affirmed, without costs. The Clerk is directed to enter judgment accordingly.

Plaintiffs maintain that their 91-year-old decedent wandered from her apartment after her home health care aide left for the evening, and that it was not until almost three weeks later, after an unsuccessful search by the NYPD of the decedent's apartment complex, that the decedent was found by a Management employee in an unlocked, vacant apartment two floors directly below her apartment. An autopsy determined that a heart attack was the cause of death.

The motion court properly dismissed so much of the first, fourth and fifth causes of action that allege the NYPD's search of the vacant apartments was negligent, and that such negligence caused the decedent pain and suffering and, ultimately, her death, upon findings that the NYPD's missing person investigation was a discretionary, not ministerial, task (*see Tango v Tulevech*, 61 NY2d 34, 40-41 [1983]), and that the NYPD did not owe the decedent a special duty to search for her (*see Cuffy v City of New York*, 69 NY2d 255, 260 [1987]). Although the NYPD allegedly gave plaintiffs, the decedent's relatives, assurances that it had conducted a proper search, which included all vacant apartments, the assurances were never conveyed to the decedent and the relatives were not the decedent's agents (*compare Sorichetti v City of New York*, 65 NY2d 461 [1985]).

The motion court erred, however, in failing to dismiss plaintiffs' remaining claims against the NYPD for emotional distress arising from the purportedly negligent search for the decedent. In determining whether a special duty to plaintiffs exists, courts must be mindful "of the precedential, and consequential, future effects of their rulings, and 'limit the legal consequences of wrongs to a controllable degree' " (*Lauer v City of New York*, 95 NY2d 95, 100 [2000], quoting *Tobin v Grossman*, 24 NY2d 609, 619 [1969]). In order to establish a special duty,

the requirement that plaintiffs show their justifiable reliance on the municipality's affirmative undertaking is consistent with the purpose of the special duty rule in that it places controllable limits on the scope of the municipality's duty and prevents the exception from overwhelming the general rule of governmental immunity (*Kircher v City of Jamestown*, 74 NY2d 251, 259 [1989]). Here, we find that plaintiffs have failed to establish justifiable reliance on the NYPD's alleged assurances which caused them to forego other available, yet unidentified, options and, consequently, have failed to establish a duty running to them.

The second cause of action against Management and Condominiums, which seeks to recover for the decedent's injuries and death, was properly dismissed because, even if Management and Condominiums were negligent in leaving a vacant apartment unlocked, the decedent's act of wandering from her apartment after her home health care aide left for the night was not foreseeable (*see Kush v City of Buffalo*, 59 NY2d 26, 33 [1983]). In addition, there is no evidence that, as plaintiffs claim, the decedent's fatal heart attack was caused by her wandering into the vacant apartment and thinking that her own apartment had been burglarized (*see Burgos v Aqueduct Realty Corp.*, 92 NY2d 544, 548 [1998]). Moreover, the motion court properly dismissed so much of the first and fifth causes of action, which seek to recover against Condominiums and Management for the relatives' own pain and suffering during the period of the unsuccessful search, as those entities owed plaintiffs and the decedent no discernible duty to conduct a search of the apartments, which search was, as the record establishes, assumed by the NYPD.

The third cause of action, for intentional infliction of emotional distress, which was based on allegations that Management and Condominiums harassed the decedent in the months before her death by commencing an eviction proceeding against her and failing to make repairs to her apartment, was properly dismissed as the acts alleged do not meet the threshold of outrageousness needed to support such a claim (*see Graupner v Roth*, 293 AD2d 408, 410 [2002]; *Walentas v Johnes*, 257 AD2d 352, 353 [1999], *lv dismissed* 93 NY2d 958 [1999]).

Finally, the motion court properly sustained the sixth cause of action for emotional distress arising out of allegations that, following recovery of decedent's decomposed body, Management and Condominiums denied the relatives access to the apartment, which they had sought for the purpose of collecting additional remains to be interred with the body. The surviving next of kin of a decedent have the right to immediate possession of the body for preservation and burial, and damages may be

awarded against any party that unlawfully interferes with that right or improperly handles the decedent's body (*Booth v Huff*, 273 AD2d 576, 577 [2000]).

In this matter, it is uncontested that following the recovery of the decedent's body, plaintiffs were turned away when they attempted to gain access to the apartment where the body had been found until a temporary restraining order was obtained approximately four months later. At that point, plaintiffs recovered additional remains of the decedent and had her casket reopened so that they could be buried with her. While it is true that the personnel denying plaintiffs access to the apartment were employees of Condominiums, that unit was controlled by Management and issues of fact exist as to whether Management was acting through Condominiums' employees as those entities, although separate, share several employees, as well as office space, and consulted with each other over security matters. Concur—Nardelli, J.P., Andrias, Sullivan and Ellerin, JJ.