In the Matter of TERRACE COURT, LLC, Appellant, v NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL, Respondent. ROBERT KATEL et al., Intervenors-Respondents. [914 NYS2d 43]—

Judgment, Supreme Court, New York County (Jane S. Solomon, J.), entered August 7, 2008, denying the petition to annul respondent's determination, dated November 15, 2007, which denied a major capital improvement (MCI) rent increase for five apartments in petitioner's building, and dismissing the proceeding brought pursuant to CPLR article 78, affirmed, without costs.

In May 2004, petitioner applied to the Division of Housing and Community Renewal (DHCR) for an MCI increase after performing work on the outside of the building that included pointing, waterproofing and masonry. Petitioner sought a monthly increase of $42.58 per room based on a claimed project cost of $1,207,853. Shortly after petitioner filed the application, three tenants objected to it, claiming that water continued to infiltrate into their apartments. The tenants' association also opposed the application. It submitted to DHCR the affidavits of several tenants who claimed that they continued to experience

leaks in their apartments in the areas where petitioner had performed pointing work. The association's submission focused on apartments 6F, 7F, 8F, 9F, 5B and 8A.

The association also proffered the affidavit of an architect who had inspected the work on the association's behalf. The architect opined that petitioner's contractor had actually done less work than petitioner claimed it had done in the rent increase application. In a supplemental affidavit, the architect averred that the leaks inside the apartments to which he was given access were consistent with water infiltrating from the outside of the building, as opposed to from the building's plumbing. The association submitted additional statements from the architect in which he noted that water continued to infiltrate the building as late as February 2005. Finally, the association submitted a violation report from the Department of Buildings, dated December 2004, which cited petitioner for allowing interior water damage in apartments 6F, 7F, 8F, and 9F, and for incomplete pointing of the building's facade.

Petitioner attempted to rebut the association's submissions by stating that it had addressed any leaks inside the complaining tenants' apartments. However, it adhered to its position that its contractor had performed the pointing work properly. Petitioner offered its own architect's reports, which disputed the tenants' architect's findings. Petitioner also pointed out that the Buildings Department violation had been dismissed, and stated the problem was because one of the "F"-line tenants had caused a leak.

In September 2005, DHCR sent an inspector to the building. A representative of petitioner accompanied the inspector as he examined the conditions of apartments 6F, 7F, 8F, 5B and 8A (access to apartment 9F was not available). According to his report, in each of the apartments the inspector observed walls in some state of disrepair, including staining, discoloration, blistering or cracking, or some combination of those conditions. Only in apartments 8A and 8F did the inspector detect actual wetness with his moisture meter. DHCR did not share its inspector's report with petitioner.

On December 19, 2005, DHCR issued an order granting petitioner's application to the extent of increasing the monthly rent by $40.20 per room. However, the order permanently exempted apartments 8A, 5B, 6F, 7F and 8F from the increase, based on the complaints of those tenants that leaks persisted in the apartments, as confirmed by the DHCR inspector's report. Petitioner filed a petition for administrative review (PAR) which challenged DHCR's conclusion that a moisture problem

persisted in the subject apartments after the pointing work was completed. Petitioner also contended in the PAR that DHCR exceeded its authority by permanently exempting apartments 8A, 5B, 6F, 7F and 8F from the rent increase, rather than giving petitioner an opportunity to cure whatever defects persisted.

DHCR denied the PAR, finding that "the state of the apartments at the time of the inspection warranted the exemption ordered by the Rent Administrator." DHCR further found that the permanent exemption was appropriate, considering that the conditions found in the apartments "existed in the apartments when work was completed just prior to the owner's filing of the application for an MCI rent increase for pointing, masonry, etc."

Petitioner commenced this article 78 proceeding. It asserted in its petition that DHCR's permanent exemption of the five apartments exceeded the agency's regulatory authority and was arbitrary and capricious. It also argued that its due process rights were violated by DHCR's failure to serve it with a copy of the inspector's report. After granting a motion by the tenants of the five apartments to intervene, Supreme Court denied the petition and dismissed the proceeding. The court held that, because the inspector's report merely confirmed the tenants' allegations that water continued to infiltrate the building after the completion of the work, no due process violation occurred as a result of DHCR's failure to provide petitioner with a copy of it. The court further held that DHCR did not abuse its discretion in ruling that an exemption was appropriate for the five apartments. That conclusion was based on the existence of the inspection report, as well as the other submissions of the parties. In addition, the court held that granting a permanent exemption was proper and did not constitute an unwarranted penalty, since petitioner was not precluded from seeking rent increases for other MCI work performed on the subject apartments.

Supreme Court did not abuse its discretion. The record before it and the agency contained much more than just the DHCR inspection report to which petitioner objects. Well before the inspection was conducted, the tenants submitted complaints indicating the pointing work was not performed properly, as well as multiple reports from an expert who stated that the damage in the tenants' apartments was directly related to inadequate waterproofing of the building facade. Thus, even without the inspection report, the record contained sufficient evidence warranting the disallowance of a rent increase for the five apartments (*see Matter of Cenpark Realty Co. v New York State Div. of Hous. & Community Renewal*, 257 AD2d 543 [1999]).

In any event, the inspection report was properly considered, despite the fact that it was based on an inspection performed 16 months after the work was completed (*see Matter of Whitehouse Estates v New York State Div. of Hous. & Community Renewal*, 5 AD3d 190 [2004] [holding that DHCR determination was "rationally supported" by an inspection performed six years after work was performed]). Moreover, the inspection report merely confirmed the allegations previously made. Accordingly, no due process violation resulted from DHCR's failure to provide a copy of the report to petitioner prior to making its initial determination (*see Matter of Empress Manor Apts. v New York State Div. of Hous. & Community Renewal*, 147 AD2d 642 [1989]).

Further, DHCR did not abuse its discretion in permanently exempting the five apartments. Indeed, the agency is entitled to the same deference on that issue as it is on the issue of whether it properly ruled that some of the subject work was defective in the first place. Petitioner argues that the agency only had two options, to deny the rent increase completely, or to grant it completely, after giving petitioner an opportunity to cure the problem that was permitting water to infiltrate the five apartments. However, petitioner fails to cite any relevant case law for that proposition. The recent case of *Matter of Langham Mansions, LLC v New York State Div. of Hous. & Community Renewal* (76 AD3d 855 [2010]), on which the dissent primarily relies to support its argument that petitioner here was entitled to an opportunity to cure, is inapposite. There, the majority held that DHCR acted irrationally by ignoring its own policy of "suspend[ing] [a MCI] rent increase for individual apartments until repairs of defects are completed (rather than revoking the increase . . . )" (*id.* at 858 [internal quotation marks and emphasis omitted]). However, that policy is irrelevant here, where DHCR did not revoke a rent increase already in place but rather declined to grant an increase in the first instance. The distinction is more than a "nuance," as it is characterized by the dissent. In the PAR discussed in *Langham Mansions*, and in *Langham Mansions* itself, the agency revoked a rent increase that had been granted years earlier. While the record contains no evidence of why DHCR adopted the policy against revocation, one can surmise that the policy was implemented to avoid the prejudice which would be visited on a landlord which relied in good faith, and for a lengthy period of time, on a rent increase, only to later lose it. Such a concern would not exist in this case, where petitioner never enjoyed a rent increase. Accordingly, there was no reason for DHCR to consider the policy that applied in *Langham Mansions*.

In any event, the dissent's emphasis on the policy recognized by this Court in *Langham Mansions* bespeaks its fundamental misunderstanding of our position here. *Langham Mansions* does not compel us to reverse the decision in this case, because *Langham Mansions* cannot possibly be read to stand for the proposition that a landlord should be given an opportunity to cure defects regardless of the circumstances. In *Langham Mansions* itself, this Court specifically noted that any necessary repairs would be "minor," and that the inspection report noting defects in the new windows "fails to conclude that any of the windows inspected were installed defectively or in an unworkmanlike manner" (76 AD3d at 859). Here, in contrast, and contrary to the dissent's reading of the record, there is no evidence that only minor work would be called for if the landlord were granted an opportunity to cure the defects. Indeed, there is no reason to believe that DHCR did not have enough evidence to conclude that significant repointing was necessary, especially because, as the dissent points out, the issue was "hotly contested." Moreover, unlike that in *Langham Mansions*, the inspection report upon which DHCR relied in this case characterized at least one of the apartments as containing a water-damaged wall that was repaired "in an unworkmanlike manner." In any event, it is not this Court's role to revisit the facts that were before DHCR. To do so would be an improper encroachment on the agency's role in adjudicating MCI applications and would exceed the well-accepted standard of review of administrative determinations (*see Matter of Heintz v Brown*, 80 NY2d 998, 1001 [1992]).

The statutory and regulatory authority on which petitioner relies, Rent Stabilization Code (9 NYCRR) § 2522.4, and DHCR's Policy Statement 90-8, which interprets the Code section, are inapplicable. Section 2522.4 (a) (13) states: "The DHCR shall no[t] grant an owner's application for a rental adjustment pursuant to this subdivision, in whole or in part, if it is determined by the DHCR prior to the granting of approval to collect such adjustment that the owner is not maintaining all required services, or that there are current immediately hazardous violations of any municipal, county, State or Federal law which relate to the maintenance of such services. However, as determined by the DHCR, such application may be granted upon condition that such services will be restored within a reasonable time, and certain tenant-caused violations may be excepted."

By its plain language, that section applies only to the situation where the owner is unquestionably entitled to a full MCI rent increase, but for the fact that the owner continues, after

the improvements are made, to allow an unrelated condition to persist which constitutes a deprivation of services or for which a violation remains open. Under those circumstances, the owner must be granted an opportunity to cure the unrelated condition before the otherwise fully-earned rent increase can be granted. Here, as the dissent acknowledges, there is no violation or deprivation of services that is unrelated to the work for which the rent increase is sought. Rather, the problem condition is related to the very work for which petitioner seeks a rent increase. Accordingly, section 2522.4 (a) (13) does not apply. Moreover, we decline to extend the reach of the section to cover the situation here, as that would usurp the power of DHCR, which is charged by the Legislature to promulgate the Code.

There is no evidence that DHCR has a specific policy never to deny a rent increase outright in the first instance, nor does petitioner present any evidence of such a policy. Petitioner does not even make this argument on this appeal, nor does it appear to have made it below. Indeed, the April 8, 2003 administrative order mentioned by the dissent appears to be one of two administrative orders in the record in which DHCR fashioned the remedy espoused by petitioner here. Two decisions do not reflect a "policy," but rather specific exercises of discretion by DHCR in particular cases that on their own do not mandate similar action by the agency in this case. Further, the dissent does not allow for the possibility that whereas in those cases DHCR may have had ample reason to believe that the landlord would make (or had made) the necessary repairs in a diligent fashion, the agency in this case, based on the record before it, did not believe that petitioner intended in good faith to address the situation, especially after it vociferously denied the existence of a problem and then engaged in unsuccessful efforts to fix it.

Without any support for its position, the dissent states that the "proper relief" would be to grant a rent increase for the entire building on a conditional basis and that DHCR's determination to permanently exempt the five apartments was "irrational." However, again, it is not the role of the Judiciary to create new policies or craft new remedies in a particular area, especially where the Legislature has already delegated that task to an administrative agency. Moreover, where the agency acts rationally, it is entitled to great deference, even if a court would have come to a difference conclusion (*see Matter of Tolliver v Kelly*, 41 AD3d 156, 158 [2007], *lv denied* 9 NY3d 809 [2007]). Indeed, a court's opinion that a particular outcome is not fair or is not in the interests of justice is not sufficient to overcome the

deference to be afforded an agency acting rationally within its area of expertise (*see Matter of West Vil. Assoc. v Division of Hous. & Community Renewal*, 277 AD2d 111, 112 [2000]).

Here, contrary to the dissent's position, it was eminently reasonable for DHCR not to permit a rent increase for that portion of the work that was defective and so did not constitute " 'an improvement to the building or to the building stock' " (*Matter of Garden Bay Manor Assoc. v New York State Div. of Hous. & Community Renewal*, 150 AD2d 378 [1989], quoting Rasch, New York Landlord and Tenant—Rent Control and Rent Stabilization, Operational Bulletin No. 84-4, at 547, 549). The landlord has failed to carry its burden of establishing that DHCR acted irrationally when, after considering all of the facts before it, including the facts that most of the work was performed properly, but a distinct portion was not, it refused to give petitioner a "do-over" for that portion of the work which was defective. Accordingly, the agency's determination is entitled to our deference.

Contrary to the dissent's assertion, nowhere do we express the view that "where this Court has found DHCR to have acted properly in denying a rent increase for work which it deemed defective, it has not required DHCR to afford a petitioner an opportunity to go back and address the problems that led to the denial." Our determination in this case is based on our view that there is no evidence that, on this record, DHCR abused its discretion in permanently exempting the subject apartments. This is not in contravention of *Matter of Weinreb Mgt. v New York State Div. of Hous. & Community Renewal* (305 AD2d 207, 208 [2003]), which was determined on its own facts and does not support the dissent's advocacy for a one-size-fits-all solution in cases of deficient MCI work.

Finally, the dissent sees the agency's determination as conferring a windfall on the exempted apartment owners and working a forfeiture on the landlord. That might have been the case if DHCR had no rational basis for ruling the way it did. But it had such a basis, and so it is simply not for this Court to pass judgment on the fairness of the result. Concur—Mazzarelli, J.P., Renwick and Román, JJ.

Friedman and Nardelli, JJ., dissent in a memorandum by Nardelli, J., as follows: I respectfully dissent, since I do not believe there is any rational basis for the determination by the Division of Housing and Community Renewal (DHCR) to exempt, permanently, the five apartments from the MCI rent increase which was awarded to petitioner landlord, and which is already being borne by the other tenants in the building. The

agency's determination works a forfeiture on the landlord by requiring it to improve the apartments while depriving it in perpetuity of the right to subsequent compensation for the cost of that work once properly completed. Moreover, the agency's determination gratuitously bestows a windfall on the tenants of five of the 37 rent-stabilized apartments in the building by permitting them to escape any MCI increase based on an improvement to their units while forcing the other rent-stabilized tenants to pay their equitable share of the cost of such work. Since the improvement at issue is building-wide, there is no justification in having these five apartments remain exempt from the increase once repairs are satisfactorily made.

Petitioner's landmarked building, located at 202 Riverside Drive, contains 91 apartments, 37 of which are rent regulated. Seeking to upgrade items that were more than 60 years old and obsolete, petitioner sought and obtained the approval of the Landmarks Preservation Commission and the Buildings Department to do pointing work and replace masonry, lintels and parapets at a cost of $1,207,853, as the majority essentially concedes. The record contains copies of the canceled checks tendered by petitioner that clearly evidence payment for the work. The New York City Landmarks Preservation Commission has issued a notice of compliance signifying that the work had been completed satisfactorily.

DHCR's basis for denying the MCI increase was that there was moisture in the five apartments after the work was completed, and that it may be inferred that the moisture resulted from the work. Even if, for the sake of argument, the claim is accurate, a contention that petitioner strenuously challenges, DHCR's solution is inconsistent with its own prior determinations in which it exempted apartments such as these from the MCI increase only until such time as the necessary repairs are made. DHCR itself provides the evidence for such an approach since in its answer in Supreme Court it submitted a decision dated April 8, 2003, involving a building located at 2500 Johnson Avenue in the Bronx (docket No. KE610015RT) in which DHCR exempted apartments with moisture problems after exterior pointing work had been done, only "until such time as the owner satisfactorily corrects the problems."

Section 2522.4 (a) (13) of the Rent Stabilization Code (9 NYCRR) provides, in pertinent part, that when "the owner is not maintaining all required services . . . [the] application [for an MCI increase] may be granted upon condition that such services will be restored within a reasonable time." DHCR Policy Statement 90-8 further provides, "Where there is a DHCR or-

der in effect determining a failure to maintain services in an individual apartment(s), and an MCI rent increase is approved, the MCI order will be issued for the entire building granting the rent increase. However, until a restoration order is issued for the individual apartment(s), the owner is barred from collecting the prospective increase."

In this case, there had not even been a prior finding that petitioner was not providing services. Indeed, it appears that the tenants complained only after the MCI application for a rent increase was filed. They had otherwise not made any complaints to the appropriate authority concerning petitioner's failure to provide services. There is no evidence in the record that the moisture, such as it was, resulted from petitioner's prior neglect of the building. Rather, it appears to have resulted from petitioner's efforts to upgrade the building. In any event, nothing in the record supports any inference that further remedial work required "major" renovations, since the moisture apparently was not significant to the tenants until the landlord sought a rent increase.

Thus, logic dictates that the proper relief would be to suspend any increases for the apartments in question until petitioner had been given an opportunity to cure the defects, but, once the defects were cured, to permit prospective (only) increases. Permanently barring petitioner from obtaining an increase, when other tenants are paying the surcharge, is irrational. Indeed, as this Court stated as recently as September of this year in a case that presented a strikingly similar issue, "[S]imple common sense dictates suspending an increase rather than revoking it permanently" (*Matter of Langham Mansions, LLC v New York State Div. of Hous. & Community Renewal*, 76 AD3d 855, 859 [2010]). Once petitioner has allayed DHCR's concerns about the condition in the individual apartments, there will be no justification for exempting the tenants residing in those apartments from paying for their fair share of the surcharge for the capital improvements, as the law provides.

In *Langham Mansions*, this Court, while holding that it was irrational to permanently deprive a landlord of an MCI rent increase simply because the initial work on certain units fell short, noted that to do so was also inconsistent with DHCR's own prior policy. The *Langham Mansions* landlord replaced windows in a 59-unit landmarked apartment building, and windows in four units were found to be defective. This Court reversed the motion court's order denying the landlord's petition to vacate the DHCR determination to exempt permanently from the MCI increases the four units in which the defective windows

were situated. This Court took approving note of the landlord's argument that the determination was arbitrary because DHCR "neither indicated a reason for its drastic penalty nor adhered to prior rulings in similar cases where only a few units were affected" (*id*. at 858).

In particular, the *Langham Mansions* court quoted from a DHCR ruling that enunciated its policy as follows: " 'The Commissioner notes that it is [DHCR] Policy to *suspend* [a major capital improvement] rent increase for individual apartments *until repairs of defects are completed* (rather than revoking the increase as suggested by the tenant-petitioners)' " (*id*., quoting *Matter of Little & Breslow*, DHCR Admin Review docket No. NC430029RP [Aug. 2, 1999]).

Thus, insofar as pertinent to this appeal, *Langham Mansions* sets forth two propositions: (1) that DHCR's policy is to suspend rather than revoke MCI rent increases for individual apartments that need repairs, and (2) that it is arbitrary for DHCR to permanently deny MCI rent increases for individual apartments because there is a small number of defective conditions that need repair.

The majority recognizes that *Langham Mansions* stands in clear conflict with its holding. In its effort to disregard *Langham Mansions*' holding it makes two points. One is that *Langham Mansions* somehow does not apply here because in *Langham Mansions* DHCR "*revoked* a rent increase that had been granted years earlier" (emphasis added) while here "petitioner never enjoyed a rent increase" for the affected apartments." The second is that in *Langham Mansions* the necessary repairs were "minor" while here, "there is no evidence that only minor work would be called for if the landlord were granted an opportunity to cure the defects." Under logical scrutiny, the distinctions drawn by the majority dissolve into meaningless and self-contradictory rhetoric.

As to the majority's first point, it is obvious that *Langham Mansions* forces the majority to concede that DHCR did in fact have a policy against permanently revoking MCI increases for individual apartments in need of repair. Trying to wish away this obstacle to reaching its desired result, the majority offers the following speculation: "While the record contains no evidence of why DHCR adopted the policy against revocation, one can surmise that the policy was implemented to avoid the prejudice which would be visited on a landlord which relied in good faith, and for a lengthy period of time, on a rent increase, only to later lose it." Here, however, this reason would not apply, as the majority would have it, because the Rent Administrator did not grant petitioner the increase in the first instance.

The majority's reasoning on this point seems odd. The landlord in *Langham Mansions* initially received the increase because it had prevailed in front of the Rent Administrator. It was only upon the petition for administrative review that the rent increase was revoked, rather than suspended, leading to the CPLR article 78 proceeding which resulted in this Court's *Langham Mansions* decision. Thus, by the majority's lights, everything rides on how the Rent Administrator decides the matter. Applying the same reasoning to the judicial system, a litigant who prevails at Supreme Court keeps the spoils of that win regardless of any error in the Supreme Court decision subsequently found by the Appellate Division.

Another troubling aspect of the majority's analysis is that its theory is just that—a theory conjured out of thin air by means of speculation and surmise. Nowhere, not in this case, not in the record or briefs for *Langham Mansions*, not in our decision in *Langham Mansions*, is the matter said to rest on the fact that the landlord had been receiving the increase. While the majority feels that the landlord's reliance on having received the rent increase barred revocation of the increase in *Langham Mansions*, it never explains why the landlord's expenditure of $1,207,853 in expectation of receiving the MCI increase in issue here counts for nothing. The reasoning is simply inconsistent.

The inadequacy of the majority's attempt to distinguish *Langham Mansions* is highlighted by the resolution of a different MCI rent increase application concerning the same building. In opposition to an MCI application based on roof, pointing and waterproofing work, the tenants alleged that the new roof was subject to pervasive and widespread leaks. In *Matter of Langham Mansions Co.* (docket No. P13 430064 OM [July 30, 2003]), the DHCR Rent Administrator barred the landlord from collecting the rent increase for the four apartments that had water stains and leak damages until all repairs were completed. In that MCI application—remarkably similar to the one at issue here—the landlord's right to repair and recover is obviously not made dependent upon the fact that landlord had been receiving the MCI rent increase; in fact, just the opposite.

The majority is correct, of course, in stating that DHCR is entitled to deference. However, the agency is "[i]ndeed . . . [not] entitled to the same deference on th[is] issue as it is on the issue of whether it properly ruled that some of the subject work was defective in the first place." True, there is no basis in the record to challenge its determination on the quality of the work, and that determination is certainly entitled to deference. Regarding the permanent revocation of the increase, however,

DHCR runs right up against its prior policy and decisions. "A decision of an administrative agency which neither adheres to its own prior precedent nor indicates its reason for reaching a different result on essentially the same facts is arbitrary and capricious" (*Matter of Charles A. Field Delivery Serv. [Roberts]*, 66 NY2d 516, 517 [1985]). DHCR has not suggested any basis for departing from its prior policy.

As to the scope of the repairs in the matter before us, the record reflects that 202 Riverside Drive contains 333 rooms and that the increases have been suspended for only 22 rooms in a job that involved waterproofing and pointing work totaling 19,262 square feet. Whether there was in fact any moisture coming through to the apartments after work stopped was a hotly contested issue.[1] In any event, the majority concedes that of 91 apartments in the building, only in two (8A and 8F) "did the inspector detect actual wetness with his moisture meter." Hence, just as in *Langham Mansions*, "minor" would appear to be the appropriate adjective to describe the repair work—work that petitioner was certainly ready to perform.

In upholding DHCR's denial-in-perpetuity of an MCI rent increase to five apartments, the majority conflates the approach to be followed when an MCI rent increase is to be disallowed building-wide and the approach to be followed when the increase is warranted, but there is a limited number of apartments that need repairs after the completion of the major capital improvement. This explains the majority's citation to *Matter of Cenpark Realty Co. v New York State Div. of Hous. & Community Renewal* (257 AD2d 543 [1999]) to support its conclusion that "the record contained sufficient evidence warranting the disallowance of a rent increase for the five apartments." *Cenpark Realty* stands for the principle that there is no MCI rent increase permitted if the work is not done on a building-wide basis and did not inure to the benefit of all tenants. The case casts no light on what should be done where, as here, the renovation qualifies as a major capital improvement but the quality of the work in certain units fell short. Similarly, *Matter of Whitehouse*

---

1. The majority states: "[i]ndeed, there is no reason to believe that DHCR did not have enough evidence to conclude that significant repointing was necessary, especially because, as the dissent points out, the issue was 'hotly contested.'" However, DHCR itself never stated that the amount of work remaining to be done was "significant," and the majority does not directly address the question of whether the record would have supported such a finding if it had been made. Based on my review of the record, I would contend that the amount of work still needed to complete the job is not extensive. I would also note that the issue of outstanding necessary work was also "hotly contested" in *Langham Mansions*.

*Estates v New York State Div. of Hous. & Community Renewal* (5 AD3d 190 [2004]) and *Matter of Garden Bay Manor Assoc. v New York State Div. of Hous. & Community Renewal* (150 AD2d 378 [1989]) are unavailing because there, too, the work did not qualify as a major capital improvement. To reiterate, in our case, no one contests that the work did so qualify. The majority's reliance on these cases bespeaks a failure to understand the distinction between work that does not constitute a building-wide improvement and work that does constitute a building-wide improvement but, as to certain units, has not yet been satisfactorily completed.

What emerges is that the majority has not one single case that supports DHCR's determination to disregard a policy of suspending rather than revoking the MCI rent increases for the five apartments. In lieu of such authority, it ultimately asserts that DHCR "did not believe that petitioner intended in good faith to address the situation." DHCR, however, makes no such claim. Moreover, the record belies the majority's assertion, since it is apparent that petitioner stands ready to remedy the conditions. At bottom, this is precisely the outcome petitioner seeks by this appeal. While, as the majority notes, "it is not the role of the Judiciary to create new policies or craft new remedies," it is the role of this Court to follow its precedents, i.e., *Langham Mansions*, and it is the role of DHCR to reach determinations that are rational and that either are consistent with its prior determinations or, if instituting a change of course, are at least accompanied by a rational explanation of that change of course. "The policy reasons for consistent results . . . are . . . to maintain the appearance of justice" (*Charles A. Field Delivery Serv.*, 66 NY2d at 519). In view of our decision in *Langham Mansions*, I do not see how the dismissal of the subject petition maintains the appearance of justice.

The majority's writing actually tracks the dissent in *Langham Mansions* at this Court and the decision at Supreme Court. These writings rely on *Matter of Weinreb Mgt. v New York State Div. of Hous. & Community Renewal* (305 AD2d 207 [2003]). The majority here, in following the Appellate Division dissent and Supreme Court decision in *Langham Mansions*, is of the view that, where this Court has found DHCR to have acted properly in denying a rent increase for work which it deemed defective, it has not required DHCR to afford a petitioner an opportunity to go back and address the problems that led to the denial. In this regard the majority concludes that "[t]he landlord has failed to carry its burden of establishing that DHCR acted irrationally when, after considering all of the facts before it,

including the facts that most of the work was performed properly, but a distinct portion was not, it refused to give petitioner a 'do-over' for that portion of the work which was defective." The problem for the majority is not merely whether DHCR has acted rationally—manifestly, it has not—but that DHCR itself under facts such as these has permitted a "do over." While the majority dismisses *Weinreb* as having been "determined on its own facts," in that case a "do-over" was exactly what was permitted to the landlord. While the landlord there sought an increase for all apartments, the record of that appeal reflects that the Rent Administrator determined that "the 22 apartments found to have defective windows are exempt from the increase for windows and sidewalk bridge *until such time [as] the owner makes the necessary repairs, and only then shall the increase be effective prospectively*" (emphasis added). Hence, the very case which has been cited to support the majority's position in fact supports the opposite result. Tellingly, the majority does not even attempt to distinguish *Weinreb* or to explain how it believes I have misconstrued its record. Instead, the majority simply disregards what DHCR did in *Weinreb*. I do not believe that such an ad hoc approach to deciding similar cases is consistent with a principled jurisprudence.[2]

Turning to the rationality issue, I note that the majority's disparagement of allowing a conditional prospective increase under these circumstances as a "do-over" does nothing to demonstrate the rationality of DHCR's perpetual disallowance of the increase. The majority disregards the fact that petitioner has expended more than $1.2 million on the improvements, with the well-justified expectation of receiving an MCI rent increase. At the conclusion of such an extensive renovation, it is certainly likely that some of the work would need further refinement. The contract for the work actually provides that the contractor will undertake post-completion corrections. Nothing in the record indicates that the vast majority of the work was performed unsatisfactorily, or that even these "punch list" items were not eventually corrected. Petitioner accepts that until any substandard work in the five subject apartments is corrected, it cannot receive an MCI rent increase for those units. Once those conditions are corrected, it is not rational to deny the increase. Moreover, once the conditions in issue are corrected, there simply will be no reason to exempt tenants in these apartments from the MCI increases. Again, the majority cites to no case which supports allowing some apartments to be permanently

2. It is troubling that DHCR itself relies on *Weinreb* on this appeal, notwithstanding that the case actually supports petitioner's position.

exempt from the MCI increase when such an increase has been imposed on the other tenants in the building. Granting the petition is not, as the majority characterizes it, an issue solely of fairness, but, more importantly, an exercise of reason over caprice.

