[16 NYS3d 233]

Albana Rugova, as Administrator of the Estate of Darden Binakaj, Deceased, et al., Respondents-Appellants, v City of New York et al., Appellants-Respondents.

First Department, September 8, 2015

## APPEARANCES OF COUNSEL

*Zachary W. Carter, Corporation Counsel*, New York City (*Amy G. London, Pamela Seider Dolgow* and *Margaret G. King* of counsel), for appellants-respondents.

*Pollack, Pollack, Isaac & DeCicco*, New York City (*Brian J. Isaac* and *Kenneth J. Gorman* of counsel), for respondents-appellants.

**OPINION OF THE COURT**

Tom, J.P.

The complaint in this matter alleges a deprivation of the common-law right of sepulcher resulting from the failure of defendants (collectively the City), employees and agencies of the City of New York—including police officers and members of the staff of the Office of the Chief Medical Examiner (OCME)—to timely notify plaintiffs, family members of decedent Darden Binakaj, that his body was available for burial. The City appeals from so much of an order as granted plaintiffs partial summary judgment with respect to liability on plaintiffs' claim that the untimely notification interfered with their right to immediate possession of the body for burial, and from so much of the order as denied the City's motion for summary judgment dismissing that claim. Plaintiffs cross-appeal from so much of the order as dismissed their claim for negligent performance of an autopsy on the ground that the right to conduct an autopsy is conferred on the OCME by statute and is not actionable. Plaintiffs have not established that the autopsy was conducted in violation of any statutory provision, and the City has not demonstrated that the court's ruling is inconsistent with governing precedent. Thus, we affirm.

On Sunday, April 20, 2008 at about 1:00 a.m., defendant New York City Police Officers Dennis Vickery and Michael Sharpe responded to a radio call of an accident on the Bronx River Parkway. Upon arriving at the scene, they observed one vehicle positioned across all three lanes of the roadway and another, a Nissan Maxima, on its roof in a grassy area on the shoulder. The operator of the Maxima, decedent Darden Binakaj, was identified by the number on the driver's license found in his wallet. The Maxima had struck a tree, and its driver was ejected through the sunroof. He was declared dead by emergency medical personnel.

After investigating the accident scene, the officers returned to the station house, where they vouchered property that had been recovered. Officer Sharpe testified that in the event of a driver fatality, it is standard procedure for the detective assigned to the case to inform the vehicle's registered owner of its location; however, he did not know if such contact was made in this case.

The accident scene was also investigated by a police detective assigned to the "night watch," who called for a medical examiner team. He passed along the case information to a

detective in the "precinct of occurrence," in this case "Precinct 47," which was responsible for notifying the family. A police sergeant assigned to the 47th Precinct, who also responded to the accident scene, verified that in the event of a fatal accident, the accident investigation squad will notify the local precinct's detective squad that an accident occurred, and the detective squad will, in turn, inform the next of kin.

At about 2:30 a.m., Medical Examiner Aglae Charlot, a pathologist with the OCME, arrived at the scene. She was acting as the on-call Medical Legal Investigator, the person assigned to go to the scene of a fatal accident, conduct a preliminary investigation into the cause and manner of death, and forward that information to the Medical Examiner. At about 4:00 a.m., Dr. Charlot requested an OCME transport team, which retrieved the body and brought it to the Bronx Medical Examiner's Office, located at Jacobi Hospital, a facility operated by defendant New York City Health and Hospitals Corporation.

An autopsy was performed at approximately 9:00 a.m. that same morning. A criminalist for the OCME testified that the office performs autopsies on most accident victims, even when the immediate cause of death is apparent, in order to obtain more information about how the accident occurred. Because the OCME has the "legal authority to perform autopsies," it was not the policy of the OCME to give prior notice to the next of kin.

On the night of the accident, at about 1:15 a.m., defendant Police Officers Filiberty and Delanuez, assigned to the 43rd Precinct in the Bronx, became tangentially involved in the investigation after receiving a radio dispatch to respond to an incident at 1265 Morrison Avenue. Finding no evidence of a recent accident, they contacted the dispatcher, who informed them that a male would be coming downstairs. An intoxicated man exited the building and told the officers that he had been involved in an accident. However, he could supply no details beyond indicating that either a friend or a cousin was driving an automobile involved in a collision. The next day, the officers were visited at the precinct house by a highway detective, who questioned them about the incident without indicating whether their informant had been involved in an accident on the Bronx River Parkway.

Decedent Darden Binakaj had been living with his parents, plaintiffs Drita and Musa Binakaj, and his sister, plaintiff

Donika Berani. On the evening of Saturday, April 19, 2008, decedent went out with his girlfriend, Fatlina Oshlani. At about 12:30 a.m. the next morning, he called his mother and told her that he would be coming home soon. Some 90 minutes later, his girlfriend called Drita and asked her if Darden had made it home. While he had not, Drita did not call the police or any hospitals, assuming that his car had broken down.

At about 8:30 or 9:00 a.m., the family began a search. They went to the 52nd Precinct but were informed that a missing person report would not be taken because Darden was an adult without any history of mental illness. They contacted hospitals and searched the Bronx River Parkway from Briggs Avenue (Drita's residence) to Ossining (Fatlina's residence). They returned to the 52nd precinct, where the police ran decedent's driver's license and license plate through their system and called neighborhood hospitals, including Jacobi Hospital, all without success. The family continued their search until about 1:00 a.m., trying other hospitals and police stations and filing a missing person's report with the Ossining police station.

The family resumed its efforts on Monday, April 21, 2008, searching from about 7:00 to 10:00 a.m. Decedent's other sister, plaintiff Albana Rugova and her husband, Kujtim, stopped at a gas station to check the newspapers and found a Daily News article about a hit-and-run accident on the Bronx River Parkway. At the accident scene, they recovered personal items, including decedent's clothes, sneakers, watch, bag, cell phone, and CDs, but no identification or wallet, items they allege were never returned by the police. After visiting the two nearest hospitals, Montefiore and North Central, they ultimately called Jacobi Hospital, learning that decedent's body was there. Kujtim identified decedent's body at the hospital at about 11 or 12 o'clock that night and was informed that an autopsy had been performed.

Decedent's father, Musa Binakaj, was visiting Kosovo, the family's native country, at the time of his son's death. The family had not contacted him during their search as they were hoping for a favorable outcome. He learned of Darden's death and the ensuing autopsy from a relative in Kosovo on Monday, April 21, 2008 at about 6:00 p.m. New York time. Because the autopsy damaged the body, which violated the family's Muslim religion and rites, they decided to transport the remains to Kosovo for religious rituals, which lasted about a month. No mention of the autopsy was ever made to anyone in Kosovo.

In July 2008, plaintiffs filed a notice of claim and thereafter commenced this action which asserts, as pertinent to this appeal, four causes of action alleging, respectively, a breach of the duty to notify them of decedent's death, an interference with their right to immediate possession of the body, the conduction of an autopsy in the absence of any compelling public necessity, and the deprivation of the next of kin's opportunity to claim the body and object to the performance of the autopsy in violation of Public Health Law § 4214 (1). In their several bills of particulars, each individual plaintiff alleges that the various defendants' failures and omissions caused serious emotional suffering and distress, anxiety, and mental anguish.

After discovery, the City moved for summary judgment dismissing the complaint. It contended that the police investigation and the OCME's handling of decedent's body were governmental functions that are not actionable in view of plaintiffs' failure to plead, and inability to prove, a special relationship with defendant officials. As to the alleged violations of the Public Health Law, the City argued that consent is not required for the performance of an autopsy by the Medical Examiner because Administrative Code of the City of New York § 17-203 provides that an autopsy shall be performed if, in the opinion of a Medical Examiner, it is deemed necessary. The City further argued that plaintiffs' claims for negligent interference with decedent's right to a proper burial should be dismissed because there was neither an unreasonable passage of time nor an improper burial to support a claim for loss of sepulcher. The City contends that after "mere hours," decedent's brother-in-law had identified and taken custody of his remains; furthermore, the family's Muslim religious rituals consumed nearly an entire month.

Plaintiffs cross-moved for partial summary judgment on the issue of liability with respect to the loss of the right of sepulcher, the performance of an unauthorized autopsy, and the interference with decedent's right to a proper burial. They argued that no special relationship is required to sustain a claim for loss of the right of sepulcher for failing to notify the next of kin, and since the city defendants were in possession of all necessary identifying documents, their failure to notify plaintiffs for over 36 hours entitles plaintiffs to judgment as a matter of law. As to the autopsy, plaintiffs argued that an issue of fact exists as to whether it was statutorily authorized because Administrative Code § 17-203 limits the Medical

Examiner's ability to conduct an autopsy to situations where it is "necessary." It further provides that if it may be concluded with "reasonable certainty" that death occurred from, among other things, "obvious traumatic injury," the medical examiner "shall certify the cause of death and file a report of his or her findings." Finally, plaintiffs asserted that the length of time they were deprived of the decedent's body is relevant only with respect to damages, not liability, since the common-law right of sepulcher gives the next of kin an "absolute right to the immediate possession of a decedent's body for preservation and burial."

In reply, the City argued that the autopsy was permitted by New York City Charter § 557 (f), since the death resulted from an "accident." With respect to the failure to notify plaintiffs about decedent's death, the City noted that plaintiffs were still able to dispose of the body as they wished, and that they therefore have no claim for the common-law right of sepulcher. The City further argued that the reference to "immediate possession" of a body refers to the time necessary for a proper burial, and should not be interpreted literally, particularly if an autopsy is necessary.

Supreme Court granted the City's motion in part and granted plaintiffs' cross motion in part. It noted that the "authority to conduct an autopsy derives solely from statute" (2013 NY Slip Op 33937[U], *5 [Sup Ct, Bronx County 2013], citing NY City Charter § 557 [f] [1] and Administrative Code § 17-203). Based on the discretion accorded to the OCME to conduct an autopsy in accident cases, the court dismissed plaintiffs' claims for negligent performance of an autopsy.

██ As a matter of statute, the Medical Examiner has extensive authority to perform autopsies within the exercise of professional discretion (Public Health Law § 4210) including where, as here, circumstances indicate that the death was accidental (NY City Charter § 557 [f] [1]). Public Health Law § 4214, which imposes an affirmative duty to seek consent before doing an autopsy, is limited to hospitals and does not impose any such duty on the OCME (*Harris-Cunningham v Medical Examiner of N.Y. County*, 261 AD2d 285, 286 [1st Dept 1999]). Thus, the fourth cause of action (failure to notify next of kin prior to performing autopsy) was properly dismissed.

Plaintiffs' contention that in the absence of suspicious circumstances providing "compelling public necessity," the OCME was required, at the very least, to seek permission from

the family before conducting an autopsy, is similarly without merit. Pursuant to statute, compelling public necessity is only required where the Medical Examiner has received an objection on religious grounds from a surviving friend or relative or has reason to believe that an autopsy is contrary to the decedent's religious beliefs (*Harris-Cunningham*, 261 AD2d at 285). Since no such information was ever communicated to the OCME, the third cause of action (conducting an autopsy in the absence of any compelling public necessity) was properly dismissed. While plaintiffs obviously could not make such objection, since they had not been informed of decedent's death, it is submitted that the Medical Examiner's office was not obligated to wait and see if an objection would be made before performing the autopsy (*see id.*).

The court granted plaintiffs partial summary judgment as to liability for the loss of the right of sepulcher because of defendants' failure to provide timely notice of the death and their interference with the right to a proper burial. The court construed the length of time that the next of kin were deprived of the decedent's body and the resulting interference with immediate possession and burial as issues of fact with respect to damages, which must await trial.

The first cause of action alleges that as a result of the failure to receive timely notification of the death of Darden Binakaj, plaintiffs sustained emotional injury. The second cause of action specifies that mental anguish resulted from defendants' interference with the family's right to the immediate possession of decedent's body. Thus, these causes of action can be read to advance a claim for violation of the common-law right of sepulcher.

The City contends that it cannot be held accountable for negligence in informing the family of the death of Darden Binakaj because it implicates "quintessential governmental functions." It argues that the role of the police is governmental (citing *Tinney v City of New York*, 94 AD3d 417 [1st Dept 2012]), as opposed to proprietary or ministerial, requiring the pleading and proof of a special relationship to establish municipal liability.* The City portrays the complaint as tantamount to a claim of negligence in connection with a police search for a

---

* The elements of a special relationship are:
  "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's

missing person, citing this Court's decision in *Estate of Scheuer v City of New York* (10 AD3d 272 [1st Dept 2004], *lv denied* 6 NY3d 708 [2006]), in support of its position that the task in which its employees were engaged was discretionary (*see Gabriel v City of New York*, 89 AD3d 982, 983 [2d Dept 2011] [failure to expeditiously identify body of missing child not actionable, as it involved discretionary investigative action by police]). Finally, the City asserts that no recovery is available for emotional distress experienced while awaiting information regarding a loved one's safety (citing *e.g. Maracallo v Board of Educ. of City of N.Y.*, 21 AD3d 318 [1st Dept 2005]).

■ It should be noted at the outset that the complaint seeks recovery for emotional injury resulting not, as in *Gabriel*, from delay in locating and identifying a missing person but from the failure to inform plaintiffs of the death of a person whose identity was immediately ascertained. Under the facts at bar, there was no need to undertake an investigation that would implicate the exercise of discretion. As the City acknowledges, if notification of the next of kin is a ministerial act, negligent conduct by city employees may afford a basis for recovery.

While emotional distress resulting from injury inflicted on another is not compensable under New York law, as the City argues, the emotional harm alleged in this matter is the direct result of the breach of a duty to timely communicate information about a death to plaintiffs themselves (*see generally Shepherd v Whitestar Dev. Corp.*, 113 AD3d 1078 [4th Dept 2014]). In *Johnson v State of New York* (37 NY2d 378 [1975]), the plaintiff alleged emotional harm as a result of receiving a message that negligently reported the death of her mother, a patient in a state hospital, when in fact the person who had died was another patient with the identical name. The Court of Appeals sustained recovery for emotional suffering on the reasoning that the particular circumstances were associated with " 'genuine and serious mental distress . . . which serves as a guarantee that the claim is not spurious' " (*id.* at 382, quoting Prosser, Torts § 54 at 330 [4th ed 1978]). The Court noted that the false message informing the plaintiff of the death and the resulting psychological injury were within the

agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking" (*Cuffy v City of New York*, 69 NY2d 255, 260 [1987]).

orbit of duty owed by the hospital to the patient's daughter and that she was entitled to recover for breach of that duty (*id.* at 382-383). Contrary to the City's contention, *Johnson* holds that in the case of negligent communications involving the death of a family member, damages are recoverable for purely emotional injury, expressly distinguishing negligent communication that causes emotional suffering from that sustained "solely as a result of injuries inflicted directly upon another, regardless of the relationship" (*id.* at 383, distinguishing *Tobin v Grossman*, 24 NY2d 609 [1969]). The unavoidable implication is that such communication is a ministerial function, as opposed to the discretionary exercise envisioned by the City for which no recovery is available. While the injury alleged in this matter resulted from an untimely rather than false communication, the City's contention that it cannot be held liable for negligence in informing the plaintiffs about the death of their loved one finds no support under *Johnson*.

The second cause of action alleges that as a result of the untimely notification, which deprived plaintiffs of any opportunity to state their objection to the autopsy, the City interfered with their right to immediate possession of decedent's body. As this Court stated in *Melfi v Mount Sinai Hosp.* (64 AD3d 26, 31 [1st Dept 2009]), "the common-law right of sepulcher gives the next of kin the absolute right to the immediate possession of a decedent's body for preservation and burial, and . . . damages will be awarded against any person who unlawfully interferes with that right or improperly deals with the decedent's body." Damages are awarded as compensation to the next of kin for the "solely emotional injury" experienced as a result of the interference with their ability to properly bury their decedent (*id.* at 32; *see Darcy v Presbyterian Hosp. in City of N.Y.*, 202 NY 259 [1911]).

The wrong alleged in *Melfi* was the failure of the city defendants to notify the family of the death of Leonard Melfi, as a result of which the decedent was buried in a mass grave after his body was used for embalming practice (64 AD3d at 28-30). There was no indication in the record that the city defendants made any effort to locate and notify the next of kin, who did not learn of the death for several months (*id.* at 29-30). Thus, *Melfi*, like *Johnson*, involves a claim of negligent communication. As this Court stated:

> "[F]or a right of sepulcher claim to accrue (1) there must be interference with the next of kin's immedi-

ate possession of decedent's body *and* (2) the interference has caused mental anguish, which is generally presumed. Interference can arise either by unauthorized autopsy or by disposing of the remains inadvertently or, as in this case, by failure to notify the next of kin of the death" (*id.* at 39 [citations omitted]).

The City states no compelling reason to depart from clear precedent to bar a cause of action for loss of sepulcher in this instance (*see Matter of Terrace Ct., LLC v New York State Div. of Hous. & Community Renewal*, 79 AD3d 630, 642 [1st Dept 2010] ["it is the role of this Court to follow its precedents"], *affd* 18 NY3d 446 [2012]). While the City argues that any mental anguish resulting from the delay in learning of the death of Darden Binakaj was minimal, the distinction is one of degree, not kind, and goes to the measure of damages and not the right of recovery.

The City nevertheless argues that even if the ministerial nature of the negligent communication were to be conceded, the action is not viable in the absence of a special relationship between the City—particularly the police or the Medical Examiner—and plaintiffs (citing *Lauer v City of New York*, 95 NY2d 95, 100, 102 [2000]; *see also McLean v City of New York*, 12 NY3d 194, 199, 202 [2009]). While the Court sustained recovery against the municipality, the special duty issue was not expressly discussed in *Johnson*, which resolved the narrower issue of whether a plaintiff may recover for the mental anguish resulting from a mistaken notification of a death without any "contemporaneous or consequential physical injury" (*Johnson*, 37 NY2d at 381). Nor was the special duty requirement before this Court in *Melfi*, which holds that for the purpose of deciding when the statute of limitations begins to run, a right of sepulcher claim accrues at the time the plaintiff actually suffers mental anguish as a result of the interference with the right to immediate possession of the body (*Melfi*, 64 AD3d at 39). *Shipley v City of New York* (80 AD3d 171 [2d Dept 2010]), cited by both parties, deals with the Medical Examiner's statutory and common-law obligation to turn over remains following the completion of an autopsy and only tangentially involves notification of the specific fact that "one or more organs have been removed for further examination" (*id.* at 178). The Court of Appeals recently held in *Shipley* the statutory discretion bestowed upon the Medical Examiner imposes no ministerial duty to notify the plaintiffs, obviating any basis for recovery (25 NY3d 645, 660 [2015]).

The law in this Department was reiterated in *Tinney v City of New York* (94 AD3d 417 [1st Dept 2012]), which holds that where the city defendants "had all the necessary identifying documents," the asserted negligence—failure to timely inform the next of kin of their father's death—was a breach of a ministerial function, not a discretionary act shielding the City from liability (*id.* at 418). Implicit in this and similar rulings is that, as a matter of judicial policy, the function of informing the family of a death is a special duty that runs to the next of kin and not the public at large (*see McLean*, 12 NY3d at 202; *Lauer*, 95 NY2d at 100). The imposition of liability against the City for an inaccurate report of the death of a close relative reflects a policy that a municipality's duty of accurate communication is both ministerial and owed directly to the next of kin (*Johnson*, 37 NY2d at 382-383). Likewise, this Court's holding that interference with the next of kin's right to immediate possession of a decedent's body may arise from the municipality's failure to notify them of the death presumes a ministerial duty owed directly to the immediate family (*Melfi*, 64 AD3d at 39). Moreover, contrary to the City's argument, plaintiffs have standing to bring this action and claim such damages (*see* Public Health Law § 4201 [2] [a] [iv], [v]; *Shepherd*, 113 AD3d at 1080-1081).

As to plaintiffs' claim of loss of sepulcher, whether the approximately 36-hour delay in informing the next of kin that they could take possession of decedent's remains caused any interference with the family's burial rights, which the City disputes, is an issue that presents a clear question for the trier of fact.

Accordingly, the order of the Supreme Court, Bronx County (Larry S. Schachner, J.), entered May 30, 2013, which, to the extent appealed from as limited by the briefs, denied the City's motion for summary judgment insofar as it sought dismissal of plaintiffs' claim for the loss of the right of sepulcher, granted plaintiffs' cross motion for partial summary judgment as to liability on that claim, and granted defendants' motion insofar as it sought summary judgment dismissing plaintiff's claim for negligent performance of an autopsy, should be unanimously affirmed, without costs.

Tom, J.P., Saxe, Manzanet-Daniels, Gische and Clark, JJ., concur.

Order, Supreme Court, Bronx County, entered May 30, 2013, affirmed, without costs.