Rivera, J.
(dissenting). The underlying facts leading to this appeal are horrific, and although specific to the parties, they remind us of the grief experienced upon the passing of a family member and the urgent desire of the living to provide final repose to the dead. Throughout history, individuals from different cultures and communities have performed funeral rites, based on personal beliefs and religious customs, intended to send the deceased to a final resting-place. This most human of acts has been repeated over the centuries in myriad and unique ways, and within our legal system the common law has recognized the next of kin’s right to possession of the body for preservation and burial, known as the right of sepulcher.
This appeal requires the Court to consider this ancient right in the context of the defendants’ statutory authority to conduct an autopsy on the body of the deceased. Resolution of the issues raised by the parties must be based on applicable common and statutory laws, which embody New York State’s long-established “[r]espect for the dead, [and] the feelings of [human beings] for their deceased parents, relatives and friends” *661 (Finley v Atlantic Transp. Co., Ltd., 220 NY 249, 255 [1917]). In accordance with the plaintiffs’ right of sepulcher and the mandates of the Public Health Law, I would hold that defendants’ statutory authority to conduct an autopsy does not permit a medical examiner to retain organs once the lawful purpose for their retention has been accomplished, absent notification to, and consent from, the next of kin. Therefore, I disagree with the majority’s conclusion that a medical examiner has unfettered discretion to retain organs once they no longer serve any legitimate purpose, and also to withhold information from the next of kin that parts of the body are unavailable immediately for burial, or are never to be returned. I therefore dissent.
L
Plaintiffs Andre and Korisha Shipley lost their only son, 17-year-old Jesse Shipley, while he was a passenger in a car involved in a motor vehicle accident in Staten Island. During the course of Jesse’s autopsy, the forensic pathologist and Richmond County’s then-Acting Deputy Chief Medical Examiner removed and took tissue samples from various organs, including the heart, liver, and kidney, and then reinserted those organs into the body.
The medical examiner also removed and retained Jesse’s entire brain for future examination by another doctor. According to the medical examiner it was his Office’s standard practice to preserve the brain in formaldehyde and then wait until approximately six more specimens were ready before requesting that the doctor travel to Staten Island to conduct the neuropathological study of the brains. The medical examiner explained that “[i]t doesn’t make sense” for the doctor “to come and do one.”
The medical examiner completed the autopsy within 24 hours of Jesse’s death, and the body was transferred to the funeral home the following day, whereupon the family held funeral services and buried their son three days later. It is undisputed that the medical examiner did not notify the plaintiffs before the autopsy or in advance of the burial that their son’s brain had been removed and retained for future study.
Plaintiffs alleged that they first learned about the retention of Jesse’s brain two months after the burial, under apparent gruesome circumstances. According to plaintiffs, they learned from their daughter that during a field trip to the Medical *662 Examiner’s Office several students and a teacher from Jesse’s high school saw what they believed to be a brain and other body parts on display in a jar labeled with Jesse’s name and the words “as a result of drunk driving.” The students had an emotional reaction to seeing the jar and its contents, and as a result the teacher immediately cancelled the trip and left with the students.
After plaintiffs confirmed that Jesse’s brain had been removed and retained, they spoke with their priest, who informed them that their son’s burial was not proper without the remaining body parts. In response to the plaintiffs’ request, the Medical Examiner’s Office returned the brain and the retained samples of several other organs to the family. Plaintiffs then conducted a second funeral and burial service for their son, months following the first.
Plaintiffs thereafter commenced this action against the City of New York and the Office of the New York City Medical Examiner, asserting, inter alia, damages for costs and emotional injuries due to the defendants’ violation of plaintiffs’ right of sepulcher. The majority rejects what had proved successful arguments in support of the plaintiffs’ claims in the courts below, but does so by misreading defendants’ statutory authority to retain organs during the course of Jesse’s autopsy.
IL
Under New York’s common-law right of sepulcher, the next of kin has the absolute right to the immediate possession of a decedent’s body for preservation and burial (Darcy v Presbyterian Hosp. in City of N.Y., 202 NY 259 [1911]; Finley, 220 NY 249; Estate of Scheuer v City of New York, 10 AD3d 272 [1st Dept 2004], lv denied 6 NY3d 708 [2006]). The concept of a family’s right to burial, recognized by diverse cultures and religious faiths, is age-old and serves an important role in the complexity of human existence. As one Court has described it,
“[t]he right of sepulcher, evoking the mystery and sorrow of death and the hope for an afterlife, has been ritualized since the earliest pre-Christian civilizations. From the Egyptian mummification process to the Roman civil law’s imposition of a duty of burial, virtually every faith and society has exhibited a reverence for the dead” (Melfi v Mount Sinai Hosp., 64 AD3d 26, 32 [1st Dept 2009]).
*663 The duty associated with disposition of the body concerns “the legal right of the surviving next of kin to find ‘solace and comfort’ in the ritual of burial” (id; see also Finley, 220 NY at 257 [recognizing unauthorized burial at sea “depriv(ed) the next of kin of the solace of giving the body a decent burial”]; Stahl v William Flecker, Inc., 184 App Div 85, 90-91 [1st Dept 1918] [“next of kin have the right to the possession for the purpose of burial or other disposition which they may see fit to make of the body of a deceased relative”]).
It is now well-settled that violation of the next of kin’s right to burial is compensable. One of the earliest and clearest articulations of such a claim appears in Foley v Phelps (1 App Div 551 [1st Dept 1896]), wherein the Court stated that
“ ‘the right to bury a corpse!,] and to preserve its remains],] is a legal right],] which the courts of law will recognize and protect.’ The right is to the possession of the corpse in the same condition it was in when death supervened. It is the right to what remains when the breath leaves the body, and not merely to such a hacked, hewed and mutilated corpse as some stranger . . . may choose to turn over to an afflicted relative” (id. at 555, quoting Brick Church Case, 4 Bradf 532).
Then in 1911, in Darcy v Presbyterian Hosp. in City of N.Y., this Court held that a surviving mother could maintain a cause of action for “wounded feelings and mental distress” arising from the unlawful interference with her right to possession of her son’s body and the unauthorized dissection of his remains (202 NY at 263). Just six years later, when this Court decided Finley, the courts had already recognized a right of action “for an unauthorized dissection or one contrary to the wishes or consent of the widow, heirs or next of kin . . . for retaining organs of a deceased body after autopsy or without consent . . . and for mutilation of a body” (220 NY at 257-258 [citations omitted]). Against this legal backdrop, Finley made clear that the next of kin has “a legal right to the possession of the body for burial and any unlawful interference with that right [is] an actionable wrong” which “is a subject for compensation” (id. at 258).
III.
The majority concludes that in accordance with the Public Health Law the medical examiner was under no duty to return *664 for burial Jesse’s removed body parts, or to notify plaintiffs of the removal and retention of Jesse’s brain and other organ samples. However, a careful reading of all the applicable statutes and rules reveals notable limitations on the medical examiner’s authority to conduct an autopsy and retain the remains of the body, and evinces an intention to ensure proper return of all body parts for burial purposes, subject only to the completion of a lawful dissection.
The Public Health Law provides that “[e]xcept in the cases in which a right to dissect it is expressly conferred by law, every body of a deceased person, within this state, shall be decently buried or incinerated within a reasonable time after death” (Public Health Law § 4200 [1]). Section 4215 (1) further states that where a dissection is performed,
“the provisions of this article, requiring the burial or other lawful disposition of a body of a deceased person, and the provisions of law providing for the punishment of interference with or injuries to it, apply equally to the remains of the body after dissection as soon as the lawful purposes of such dissection have been accomplished.”
By its plain language, the statute is protective of the next of kin’s right of burial of the deceased’s remains.
While the statute grants authority to conduct an autopsy, article 42 of the Public Health Law, upon which the majority and defendants rely, “reflects . . . concerns for respecting the corporeal remains of decedents and protecting the feelings of family members by strictly limiting the circumstances under which autopsies may be performed” (Bambrick v Booth Mem. Med. Ctr., 190 AD2d 646, 647 [2d Dept 1993] [emphasis added]). Accordingly, autopsies only may be conducted by designated individuals for statutorily delineated purposes (see Public Health Law § 4209 [limiting the persons who may perform an autopsy]; id. § 4210 [limiting the right to dissect the body of a deceased person]). Thus, a medical examiner is authorized to dissect a deceased person under Public Health Law § 4210,[1] for example, in cases prescribed by special statutes, in the course of a criminal investigation, generally to determine the cause of death, or where a next of kin consents (see Public Health Law § 4210 [2] [dissection is permitted by a coroner or medical *665 examiner, “performed in the course of an investigation within the jurisdiction of the officer performing or directing the dissection, or . . . upon the written request of a district attorney, or sheriff, or the chief of a police department”]; id. § 4210 [3] [dissection authorized by next of kin of the deceased]).
Moreover, under New York City’s local laws and rules the Chief Medical Examiner may perform an autopsy or dissection for those dying “from criminal violence, by accident, by suicide, suddenly when in apparent health, when unattended by a physician, in a correctional facility or in any suspicious or unusual manner” (NY City Charter § 557 [f] [1]; see also County Law § 673). Significantly, no autopsy is conducted “[i]f it may be concluded with reasonable certainty that death occurred from natural causes or obvious traumatic injury, and there are no other circumstances which would appear to require an autopsy” unless the medical examiner deems the autopsy necessary in accordance with the law (Administrative Code of City of NY § 17-203).[2]
As the laws authorizing an autopsy are in derogation of the common-law right of sepulcher, they must be strictly construed (McKinney’s Cons Laws of NY, Book 1, Statutes § 301, Comment [“(S)tatutes in derogation or in contravention (of the common law), are strictly construed, to the end that the common law system be changed only so far as required by the words of the act and the mischief to be remedied”]). Thus, notwithstanding the majority’s suggestion to the contrary, a medical examiner does not have unlimited power to conduct an autopsy. Although a medical examiner exercises a certain amount of professional judgment in the course of performing a human dissection, the law does not permit professional conduct in excess of statutory authority. The question then is whether a medical examiner may retain organs or parts thereof, and, upon the next of kin’s request, refuse to turn them over for *666 burial and proper disposition once the autopsy is complete and such human material is no longer required for further study.
In a case presenting facts and claims similar to those presented by this appeal, the Southern District of New York, in Hendriksen v Roosevelt Hosp., refused to dismiss a right of sepulcher claim based on the alleged lack of consent by plaintiff to the removal and retention of organs during a lawful autopsy (297 F Supp 1142, 1143-1144 [1969], citing Hassard v Lehane, 143 App Div 424, 427 [1st Dept 1911] [recognizing claim for retention of organs]). In reaching its conclusion, the Southern District relied on the First Department’s decision in Hassard v Lehane, which involved an unlawful autopsy, and the removal and retention of the decedent’s organs. The First Department determined that the next of kin had a legal right to the possession of her son’s corpse “in the condition it was in at the instant of death for the purpose of preserving and burying the remains” (143 App Div at 425). It further opined that retention of the organs was unwarranted absent legal authority to do so {id. at 426).
The Southern District recognized in Hendriksen that the authority to conduct an autopsy is limited in accordance with the statute, and, to the extent organs are removed, there must be a lawful basis for their retention. Whether on consent of the next of kin or upon some other lawful authority, organ retention is not automatically permissible, or in fact intended, by the statute (Hendriksen, 297 F Supp at 1144-1145; see also Dixon v City of New York, 76 AD3d 1043 [2d Dept 2010], decided with Shipley v City of New York, 80 AD3d 171 [2010]). Although the court’s analysis in Hendriksen responded to the issues in that case, the approach is just as applicable and equally relevant to the issues raised by the current appeal:
“We are not herein concerned with the mere removal of organs in the course of autopsy, or the taking of tissue samples in order to determine cause of death, but with the failure, as yet unexplained, to return those organs to the body and thereby restore its condition to the extent reasonably possible. The necessity of consent to the retention of parts of the body, even in the presence of consent to the autopsy itself, was established by Hassard v. Lehane, which stated:
“ ‘Doubtless if the defendant made the autopsy by the direction of the coroner, that would justify the *667 dissection of the body . . . but it would not, in the absence of further directions from the coroner or district attorney, or other evidence, warrant the removal or detention of any part of the body’ ” (297 F Supp at 1144 [citation omitted]).
Yet, despite the long-established right of sepulcher, the Public Health Law’s apparent recognition of the next of kin’s right to burial, the state and city laws’ limits on the medical examiner’s authority to conduct an autopsy, and the case law requiring the return of organs and body parts upon completion of the autopsy and all necessary examinations, the majority concludes that a medical examiner may retain organs and organ specimens, even though such retention serves no statutory purpose. That conclusion depends, in my opinion, on a misreading of Public Health Law § 4215 (1), and the erroneous premise that the right of sepulcher includes only the dissected corpse.
Specifically, the majority adopts the City’s interpretation that the phrase “remains of the body” contained in section 4215 (1) excludes organs removed during an autopsy (majority op at 655-656). In support of this conclusion, the majority relies on other sections of the Public Health Law, specifically sections that criminalize theft of tissues and organs, which make no reference to “remains of the body.” That interpretation is a strained and decontextualized reading of the statute (see McKinney’s Cons Laws of NY, Book 1, Statutes § 97).
The Public Health Law makes no provision for the retention of organs upon completion of an autopsy, with one exception, found in section 4215 (2). That subdivision refers to autopsy or dissection of an unclaimed body, and provides “that the persons having possession of the [unclaimed] body may, in their discretion, cause it to be either buried or cremated, or may retain parts of such body for scientific purposes.” In accordance with this subdivision, the person in possession of the unclaimed body may retain, for scientific purposes, “parts” rather than the whole of the body, upon completion of the autopsy or dissection. Consequently, “parts of such body” refers, by necessity, to a subset of the “remains of the body.” Thus, “remains of the body” encompasses more than merely the cadaver without its organs, because otherwise the reference to “parts of such body” would be unnecessary.
Moreover, the limitation in subdivision (2) that retention of “parts of such body” is permissible solely “for scientific *668 purposes” provides additional support for reading “remains of the body” to include organs since organs are commonly used for scientific study. This interpretation of “remains of the body” applies to the entirety of section 4215, and makes clear that the majority’s reading of subdivision (1) is textually unsupportable. (See McKinney’s Cons Laws of NY, Book 1, Statutes § 97, Comment [“The different parts of the same act, though contained in different sections, are to be construed together as if they were all in the same section, and the meaning of a single section may not be determined by splitting it up into several parts”].)
Furthermore, while article 42 of the Public Health Law does not define “parts of such body,” article 43, which applies to anatomical gifts, specifically includes organs within its definition of “parts of the body” (Public Health Law § 4300 [5]). Therefore, it is not true, as the majority argues, that the legislature limits itself to use of the word “organ” when it means to include only the word “organ.” Rather, the legislature employs various terms throughout the Public Health Law when intending to refer to organs and “other portions of [the] human body” (see id.).
The majority’s reliance on sections 4216, 4217, and 4218 of the Public Health Law does not support its interpretation of section 4215 (1), because those sections impose criminal liability for uniquely targeted conduct and thus require a certain textual specificity. Those sections — respectively titled “Body stealing,” “Receiving stolen body of a human being,” and “Opening graves” — criminalize what is best known as body snatching, trafficking in human body parts, and grave robbing.[3] The nature of these proscribed acts, generally for profit and focused less on the corpse as a whole than on the unlawful removal of *669 more conveniently traded individual body parts, such as organs, explains the statutory reference to discrete, highly valued, body components. Certainly there is no suggestion by any party to this appeal that these sections apply to a medical examiner’s withholding of organs for purposes of an autopsy or legitimate examination. Thus, these provisions cannot be read to mean that the phrase “remains of the body” as set forth in section 4215 (1) excludes an essential part of the body, i.e., organs.
As an additional matter, while our focus is on the interplay between the Public Health Law and the right of sepulcher, the defendants’ litigation position regarding the medical examiner’s authority to retain organs appears at odds with the City’s Health Code. Article 205 of the Code, “Deaths and Disposals of Human Remains,” defines “human remains” as “a conceptus which has completed 24 weeks or more of gestation or all or any part of the dead body of a human being but does not include human ashes recovered after cremation” (NY City Health Code [24 RCNY] § 205.01 [c] [emphasis added]). Given the broad scope of this definition, the phrase “any part of the dead body” must be accorded its natural meaning to include a deceased’s organs. Section 205.17, titled “Claiming of human remains removed to the City mortuary,” further provides that “human remains which have been removed to the City mortuary” shall be delivered along with the death certificate, “on demand, to a funeral director or undertaker,” employed by, inter alia, the next of kin. Of course, the medical examiner is authorized to conduct an autopsy for a lawful purpose (Administrative Code § 17-203). Thus, in New York City, “human remains” includes the decedent’s organs and those organs must be returned upon demand by the funeral home, for proper disposition by the next of kin, once the lawful purpose for retention of the organs has been fulfilled.
*670 Here, only after the medical examiner released the body for the first burial, and once the plaintiffs realized the brain had been removed and demanded it be turned over, did the medical examiner return Jesse’s brain to plaintiffs. The question then is whether the defendants may be held liable for plaintiffs’ emotional damages due to the medical examiner’s failure to inform plaintiffs of the removal and retention of Jesse’s brain prior to the first funeral service and burial.
IV
“Government action, if discretionary, may not be a basis for liability, while ministerial actions may be, but only if they violate a special duty owed to the plaintiff, apart from any duty to the public in general” (McLean v City of New York, 12 NY3d 194, 203 [2009]). Under the common-law right of sepulcher, the Public Health Law, and City code, the medical examiner is without authority to retain organs once the lawful purpose for their removal and retention has been accomplished. Therefore, once the legitimate basis for withholding the organs has ended, the medical examiner has a ministerial duty to turn over the organs to the next of kin upon demand or, where the next of kin does not seek return, to properly dispose of the organs.
In concluding that the medical examiner has no such ministerial duty, the majority relies on its interpretation of section 4215, and also points to Public Health Law § 1389-aa (1) (b), which includes organs and body parts removed during an autopsy within its definition of regulated medical waste (majority op at 656-657). For the reasons I have already described, section 4215 requires that the medical examiner return the organs, absent a legitimate purpose to retain them. With respect to the majority’s reference to section 1389-aa (1) (b), the majority ignores the fact that, pursuant to his usual practice, the medical examiner here initially turned over all the organs along with the body, with the exception of Jesse’s brain. The medical examiner testified that he removed all the organs in order to obtain samples for the autopsy and future study. He then, again in accordance with his usual practice, placed all of the organs into a bag, not including the brain, which he preserved for future examination. He put the bag into the body and stitched it up for pick up by the funeral home. As this testimony establishes, the fact that organs are removed from the body during an autopsy does not mean that the medical *671 examiner cannot reinsert them for burial or that the statute prohibits return of the organs to next of kin. Indeed, defendants admit that
“[t]he Medical Examiner, at the request of the next of kin, may, and does, as appropriate and as occurred in this case, return, for disposition by burial or cremation in accordance with the law, organs removed during an authorized autopsy once the legitimate purposes for the retention of those organs have been fulfilled” (citation omitted).
Under these circumstances, the return of organs is ministerial, and, therefore, if a special duty to plaintiffs exists, injury caused by the failure to return or the negligent mishandling of those organs may be a basis for liability.
In Pelaez v Seide, this Court stated that
“[a] special relationship can be formed in three ways: (1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or (3) when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation” (2 NY3d 186, 199-200 [2004]).
Plaintiffs’ action falls within the first category of special relationship cases because under section 4215 (1) of the Public Health Law the medical examiner is under a duty to return the body and its remains. Such duty is clearly for the benefit of the next of kin who is, by law, authorized to bury and dispose of the body.
Plaintiffs’ action also falls within the second category of special relationship cases because they relied on the defendants’ assumption of the duty to conduct an autopsy as required by law, which also mandated return of Jesse’s organs once the legitimate purpose for their retention had been accomplished. To establish a special relationship by a duty voluntarily assumed, plaintiffs must show that there was:
“(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality’s agents that inaction could lead to harm; (3) some form of direct *672 contact between the municipality’s agents and the injured party; and (4) that party’s justifiable reliance on the municipality’s affirmative undertaking” (Valdez v City of New York, 18 NY3d 69, 80 [2011]).
Here, the medical examiner took possession of the body, conducted an autopsy, and returned the body for purposes of burial by the next of kin. The medical examiner knew that the proper burial of the plaintiffs’ son and the condition of the body were significant to the family as the father indicated the body should appear presentable for the funeral service. Moreover, the right of sepulcher itself recognizes the significance of this most difficult and consequential of actions, the proper and final disposition of the remaining corporeal remains of a loved one. The medical examiner surely understood that failure to return the body in order to comply with this most intimate and personal of familial obligations would result in harm to plaintiffs. Further, it is undisputed that there was contact between the medical examiner and Jesse’s father related to the autopsy and the burial. On these facts, plaintiffs justifiably relied on the medical examiner’s assumption of the duty to return the body, including the organs, for proper burial, thus establishing the basis for a special relationship between the City and plaintiffs.
However, because the next of kin may very well determine that a proper burial can be conducted without the organs, the Appellate Division properly concluded that the medical examiner may satisfy the duty to the next of kin by notification of the organs’ removal (see 80 AD3d at 178). Upon such notice, the next of kin may then determine whether to request the return of the organs, and, if so, whether to delay burial and wait to learn if the medical examiner can, as a legal matter, comply with this request, or whether to proceed expeditiously with the disposition of the body.
The majority finds that because there is no duty to return organs, the medical examiner also has no duty to notify the next of kin that organs have been retained (majority op at 658). While I disagree that the medical examiner has no duty to return the organs, I agree that there is no statute mandating notification. Nevertheless, that fact is of no moment because the right of sepulcher provides sufficient legal basis for imposing a notification requirement. As this case makes abundantly clear, the right would be rendered meaningless if the next of *673 kin did not know about the condition under which the body was returned. In other words, notification ensures a fully informed next of kin’s exercise of the right of sepulcher.
The majority also raises what it considers to be the “practical and policy considerations” of providing notice to next of kin (majority op at 658). However, any such considerations must, of necessity, be addressed in the first instance by the defendants. In any event, the fact of the matter is, on this appeal, defendants have represented that they are in compliance with the Appellate Division’s decision. That is to say, they provide some type of notice to next of kin, and upon request return the organs.
V
The question remains open as to whether the majority’s reading of the Public Health Law permits a demand for organs based on religious grounds, or whether there should be some notice concerning the legal rights of next of kin based on the decedent’s religious beliefs. However, as the majority acknowledges (majority op at 652), section 4210-c (1) provides for a religious exemption from an autopsy or dissection, and states specifically,
“Notwithstanding any other provision of law, in the absence of a compelling public necessity, no dissection or autopsy shall be performed over the objection of a surviving relative or friend of the deceased that such procedure is contrary to the religious belief of the decedent, or, if there is otherwise reason to believe that a dissection or autopsy is contrary to the decedent’s religious beliefs.”
Notwithstanding the clear legislative intent to address religious concerns regarding dissection and autopsies, this case suggests the general public has little basis by which to understand the rights afforded under the statute.
According to the undisputed facts, the medical examiner made no inquiry of the plaintiffs about their possible objection to the autopsy on religious grounds. However, plaintiffs’ testimony suggests they did not know about the exemption even though religious concerns about the condition of their son’s post-autopsy body informed their demand for their son’s brain. Jesse’s mother testified that she “wanted to confirm that his remains be with his body in consecrated grounds for resurrection purposes on judgement day.”
*674 Moreover, even though the statute refers to religious beliefs, and makes no distinction among religions or the types of faith-based objections to an autopsy, the medical examiner testified “that families can object, yes, based on certain religions. Not all religions.”[4] Apparently, the medical examiner here based decisions concerning the religious exemption on the name of the decedent and the existence of some religious artifact or apparel, which suggested to him the decedent’s religious affiliation. This seems contrary to the language and purpose of section 4210-c and further supports the need for notification so that the next of kin are well-prepared to make fully informed choices.
The majority suggests that any change in the rights of the next of kin should come from the legislature. That is indeed so because the majority has interpreted the law as applied to cases involving an autopsy in such a way as to deny the next of kin the right to demand return of their loved one in as undisturbed a condition as possible. Perhaps the majority’s ruling will result in greater awareness of the right of sepulcher. Even so, for those who indeed know enough to seek the return of the deceased’s organs, the majority provides no “solace and comfort,” and little assurance, that their request will be honored by the medical examiner. Therefore, I dissent.
Judges Read, Abdus-Salaam, Stein and Fahey concur; Judge Rivera dissents in an opinion in which Chief Judge Lippman concurs.
Order, insofar as appealed from, reversed, with costs, and the complaint dismissed in its entirety.

. Section 4210 (2) also authorizes coroners and coroner’s physicians to conduct dissections.

. County Law § 673 (1) authorizes investigation of deaths appearing to be caused by
“(a) A violent death, whether by criminal violence, suicide or casualty;
“(b) A death caused by unlawful act or criminal neglect;
“(c) A death occurring in a suspicious, unusual or unexplained manner;
“(d) A death caused by suspected criminal abortion;
“(e) A death while unattended by a physician . . .
“(f) A death of a person confined in a public institution other than a hospital, infirmary or nursing home.”

. Section 4216, “Body stealing,” provides:
“A person who removes the dead body of a human being, or any tissue, organ or part thereof from a grave, vault, or other place, where the same has been buried, or from a place where the same has been deposited while awaiting burial, without authority of law, with intent to sell the same, or for the purpose of dissection, or for the purpose of procuring a reward for the return of the same, or from malice or wantonness, is guilty of a class D felony.”
Section 4217, “Receiving stolen body of a human being,” states: “A person who purchases, or receives except for the purpose of burial, the dead body of a human being, or any tissue, organ, or part thereof, knowing that the same has been removed contrary to section forty-two hundred sixteen of this title, is guilty of a misdemeanor.”
*669 Section 4218, “Opening graves,” provides:
“A person who opens a grave or other place of interment, temporary or otherwise, or a building wherein the dead body of a human being is deposited while awaiting burial, without authority of law, with intent to remove the body, or any tissue, organ or part thereof, for the purpose of selling it or demanding money for the same, or for the purpose of dissection, or from malice or wantonness, or with intent to steal or remove the coffin or any part thereof, or anything attached thereto, or any vestment, or other article interred, or intended to be interred with the dead body, is guilty of a class D felony.”

. The defendants’ website identifies certain religions with the potential to raise “a viable religious objection” (Office of Chief Medical Examiner, Frequently Asked Questions, http://www.nyc.gov/html/ocme/html/faq/ faq.shtml#6 [“(I)f we cannot fulfill our legal and public responsibility without performing an autopsy, if the family has raised a viable religious objection (i.e., based on Judaism, Islam, Christian Science, Jehovah’s Witness, or 7th Day Adventist) they will be provided an opportunity to hire an attorney, if they desire, and to present their objection to a Judge who will determine whether an autopsy will be performed”]).