Anaya v City of New York (2024 NY Slip Op 24223)

[*1]

Anaya v City of New York

2024 NY Slip Op 24223

Decided on August 21, 2024

Supreme Court, New York County

Kingo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on August 21, 2024
Supreme Court, New York County

Alberto Anaya, Plaintiff,

against
City of New York, NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, LIVEONNY FOUNDATION, KERVENS LOUISSANT, NEW YORK UNIVERSITY LANGONE HOSPITALS, Defendant.

Index No. 154130/2023

Ed Gersowitz and Anthony Makarov, Esq. for Plaintiff
Deirdre Elizabeth Tracey, Esq. for NYU
Andrew Orenstein, Esq. for NYCHHC
Richard Lerner, Esq. for Mazzola Linderstrom LLP

Hasa A. Kingo, J.

The following e-filed documents, listed by NYSCEF document number (Motion 002) 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 59, 61, 64 were read on this motion to/for DISMISSAL.
The following e-filed documents, listed by NYSCEF document number (Motion 003) 56, 57, 60, 62, 63 were read on this motion to/for DISMISSAL.
Upon the foregoing documents, Defendant New York University Langone Hospitals ("NYU") moves, pursuant to CPLR §§ 3211 (a)(1) and (a)(7), to dismiss Plaintiffs' amended complaint as against it (Motion Seq. 002). Plaintiffs Alberto Anaya and Freddys Baldrich Hilder (together, "Plaintiffs") oppose and cross-move for summary judgment on the issue of NYU's liability. Separately, Defendant Kervens Louissaint ("Louissaint") moves to dismiss the amended complaint as against him (Motion Seq. 003). Plaintiffs oppose. For the reasons set forth herein, NYU's motion and Plaintiff's cross-motion are denied, and Loussaint's motion is granted.
BACKGROUND
This action arises from the tragic death of decedent Myriam Hoyos De Baldrich (the "Decedent"), mother of plaintiff Alberto Anaya ("Anaya") and wife of plaintiff Freddys Baldrich Hilder (NYSCEF Doc No. 33, amended complaint ¶¶ 5, 7). On May 6, 2022, the Decedent [*2]resided with Anaya in Rockville Centre, New York (NYSCEF Doc No. 19, Anaya's 50-h hearing tr at 14:2-17; 14:20-15:2; 28:19-20).[FN1]
That day, Anaya left his home to go to work in the morning (id. at 59:16-60:12). When Anaya returned home later that day, decedent was not present at their residence (id.). Despite his attempts, Anaya was unable to reach decedent on her cellphone (id. at 59:16-60:20). Anaya then contacted other family members to inquire if they were aware of Decedent's whereabouts, but they were unable to locate her (id.). Anaya then drove around Rockville Centre and Far Rockaway, where his mother regularly attended church, but he was unable to find her (id. at 60:21-61:19).
Unbeknownst to Plaintiffs, Decedent was struck by a Brooklyn-bound subway train near the West 14th Street and 6th Avenue station and was rendered unconscious on May 7, 2022, at or about 6:55 p.m. (NYSCEF Doc No. 33, amended complaint ¶ 31). Decedent was taken by ambulance to Bellevue Hospital ("Bellevue") (id. ¶ 51). Bellevue is owned and operated by Defendant New York City Health and Hospitals Corporation ("NYCHHC") (id. ¶¶ 11-14). There, Plaintiffs contend that no attempts were made to identify Decedent or locate her next of kin even though Decedent possessed written proof of her identify on her person (id. ¶¶ 38-70). Specifically, Decedent possessed on her person a piece of paper bearing her name (id. ¶ 34). Unaware of Decedent's injury and hospitalization, on May 8, 2022, Plaintiffs reported Decedent missing to the Nassau County Police Department, 7th Precinct, which issued a "Missing Vulnerable Adult report" (id. ¶ 71).
On May 9, 2022, Decedent was pronounced brain dead at Bellevue (id. ¶ 72). On May 12, 2022, William Hicks, Chief Executive Officer of Bellevue, executed an Authorization for "Organs and Tissues Donation" regarding Decedent (id. ¶ 77). By this authorization, NYCHHC authorized the dissection of Decedent's body for the purpose of harvesting and removing her organs and tissues by Defendant LiveOnNY ("LiveOnNY"), a nonprofit organization that facilitates organ and tissue donation (id. ¶ 78). LiveOnNY thereafter coordinated the removal and transplantation of Decedents organs (id. ¶ 85). LiveOnNY were also purportedly aware of the piece of paper bearing Decedent's name, yet did not conduct a search of the name, failed to fingerprint Decedent, and failed to take other reasonable steps to identify Decedents' next of kin (id. ¶¶ 88-94).
On May 16, 2022, Decedent's body was transported to New York University Langone Hospital, owned and operated by NYU (id. ¶ 104). NYU was also purportedly aware of the piece of paper with Decedents name, but did not take steps to identify her (id. ¶¶ 105-112). Thereafter, NYU and its agents, servants, or employees harvested organs from Decedent's body, including her thoracic and abdominal aorta, kidneys, adrenal glands, liver, and gallbladder (id. ¶ 115). On the next day, Decedent's body was transported to New York City's Office of the Chief Medical Examiner ("OCME"), where her fingerprints were taken and she was identified (id. ¶ 126-128). On May 18, 2022, Detective Michael Siarkowicz of the Nassau County Police Department notified Plaintiffs of Decedent's death (id. ¶ 129).
Plaintiffs thereafter filed a notice of claim and commenced this action by filing a summons and complaint on May 5, 2023, which interposed one cause of action against the City [*3]of New York (the "City") and NYCHHC (NYSCEF Doc No. 1, summons and complaint). NYCHHC filed a pre-answer motion to dismiss pursuant to CPLR § 3211 (a)(7), (a)(3), and to treat the motion as a motion for summary judgment (NYSCEF Doc No. 33, notice of motion). Plaintiffs opposed and cross-moved for summary judgment on the issue of NYCHHC's liability and to amend the complaint and add defendants LiveOnNY and NYU (NYSCEF Doc No. 14, notice of cross-motion). By order and decision of this court dated February 23, 2024, the motion was denied, and the cross-motion was granted to the extent of the amendment and denied as to summary judgment. The amended complaint filed on February 26, 2024 interposes causes of action for (1) loss of sepulcher, (2) violation of the Decedents religious beliefs, (3) intentional infliction of emotional distress, and (4) gross negligence (NYSCEF Doc No. 33, amended complaint).
NYU now moves pursuant to CPLR § 3211 (a) to dismiss the amended complaint as against it (NYSCEF Doc No. 44, notice of motion). In support of its motion, NYU argues that (1) it is immune from suit in a civil action due to the immunity provision of the Gift Act, (2) Plaintiffs fail to state a cause of action for loss of sepulcher and Plaintiffs' claims are refuted by documentary evidence, (3) Plaintiffs fail to state a cause of action for violation of religious beliefs, (4) Plaintiffs' cause of action for intentional infliction of emotional distress is untimely and duplicative, and (5) Plaintiffs causes of action for gross negligence and punitive damages must be dismissed because the conduct alleged does not rise to the level of gross negligence. Plaintiffs oppose the motion and cross-moves for summary judgment on the issue of NYU's liability (NYSCEF Doc No. 49, notice of cross-motion). In opposition, Plaintiffs argue that the Gift Act immunity provision does not apply because NYCHHC did not have statutory authority to dispose of Decedent's body or authorize an anatomical gift of a Decedent's remains under the Gift Act, the Gift Act does not apply to unidentified patients in any event, there are questions of fact regarding NYU's failure to identify the Decedent that preclude dismissal, the cause of action for intentional infliction of emotional distress is timely pursuant to the relation back doctrine, punitive damages are available for a cause of action for loss of sepulcher, and NYU's motion to dismiss the second cause of action is premature. NYU reiterates its position on reply.
Separately, Louissaint moves pursuant to CPLR § 3211 (a) to dismiss the amended complaint as against him for failure to state a cause of action. Plaintiffs oppose.
DISCUSSION
On a motion to dismiss brought under CPLR §3211 (a)(7), the court must "accept the facts as alleged in the complaint as true, accord the plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v Martinez, 84 NY2d 83, 87-88 [1994][citations omitted]). Ambiguous allegations must be resolved in the plaintiff's favor (see JF Capital Advisors, LLC v Lightstone Group, LLC, 25 NY3d 759, 764 [2015]). "The motion must be denied if from the pleadings' four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law" (511 West 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 152 [2002][internal citations omitted]). "Whether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss" (Cortlandt Street Recovery Corp. v Bonderman, 31 NY3d 30, 38 [2018]), but a pleading consisting of "bare legal conclusions" is insufficient (Leder v Spiegel, 31 AD3d 266, 267 [1st Dept 2006], affd 9 NY3d 836 [2007], cert denied 552 US 1257 [2008]) and "the court is not required to accept factual allegations that are [*4]plainly contradicted by the documentary evidence or legal conclusions that are unsupportable based upon the undisputed facts" (Robinson v Robinson, 303 AD2d 234, 235 [1st Dept 2003]).
A motion for summary judgment "shall be granted if, upon all the papers and proofs submitted, the cause of action or defense shall be established sufficiently to warrant the [c]ourt as a matter of law in directing judgment in favor of any party" (CPLR § 3212 [b]). "The proponent of a motion for summary judgment must demonstrate that there are no material issues of fact in dispute, and that it is entitled to judgment as a matter of law" (Dallas-Stephenson v Waisman, 39 AD3d 303, 306 [1st Dept 2007]). The movant's burden is "heavy," and "on a motion for summary judgment, facts must be viewed in the light most favorable to the non-moving party" (William J. Jenack Estate Appraisers & Auctioneers, Inc. v Rabizadeh, 22 NY3d 470, 475 [2013][internal quotation marks and citation omitted]). Upon proffer of evidence establishing a prima facie case by the movant, the party opposing a motion for summary judgment bears the burden of producing evidentiary proof in admissible form sufficient to require a trial of material questions of fact (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). "A motion for summary judgment should not be granted where the facts are in dispute, where conflicting inferences may be drawn from the evidence, or where there are issues of credibility" (Ruiz v Griffin, 71 AD3d 1112, 1115 [2d Dept 2010][internal quotation marks and citation omitted]). A motion for summary judgment is premature when the issues raised therein require further discovery, which have not yet been completed, and particularly when depositions as well as physical examinations of the parties remain outstanding (Mason v City of New York, 121 AD3d 468 [1st Dept 2014]; Blech v West Park Presbyt. Church, 97 AD3d 443 [1st Dept 2012]).
A. NYU's Motion to Dismiss (Seq. 002)
NYU moves pursuant to CPLR § 3211 (a)(7) to dismiss the first cause of action for loss of sepulcher for failure to statue a cause of action (Motion Seq. 002). The common law right of sepulcher "gives the next of kin the absolute right to the immediate possession of a decedent's body for preservation and burial" (Almeyda v Concourse Rehab. & Nursing Ctr., Inc., 195 AD3d 437, 438 [1st Dept 2021], citing Shipley v City of New York, 25 NY3d 645, 653 [2015]; Melfi v Mount Sinai Hosp., 64 AD3d 26, 31 [1st Dept 2009]). "The right of sepulcher thus protects the legal right of the next of kin to find solace and comfort in the ritual of burial" (Almeyda, 195 AD3d at 438. [internal quote omitted]). Damages for loss of sepulcher "will be awarded against any person who unlawfully interferes with that right or improperly deals with the decedent's body" (id.). The Appellate Division, First Department, has held that a cause of action for loss of sepulcher may be maintained where a hospital or other party fails to make reasonable efforts to locate the next of kin of a deceased person and timely notify the family that the body is available for burial (Melfi v Mount Sinai Hosp., 64 AD3d 26 [1st Dept 2009], Rugova v City of New York, 132 AD3d 220 [1st Dept 2015]), or where a decedent's body is "mishandled" (Almeyda, 195AD at 438).
To state a cause of action for loss of sepulcher, a plaintiff must plead factual allegations that (1) there was interference with the next of kin's immediate possession of decedent's body, and (2) the interference caused mental anguish. Mental anguish is generally presumed and is a question of damages (Rugova, 132 AD3d at 229-230 [While the City argues that any mental anguish resulting from the delay in learning of the death [] was minimal, the distinction is one of degree, not kind, and goes to the measure of damages and not the right of recovery."). "Interference can arise either by unauthorized autopsy or by disposing of the remains [*5]inadvertently or, as in this case, by failure to notify the next of kin of the death" (id. at 230). Here, Plaintiffs allege that NYU had the means and information necessary to identify Decedent, but failed to identify Decedent and inform Plaintiffs of Decedents' hospitalization and death, which interfered with their right to immediate possession of Defendants' remains. Plaintiffs also allege that these actions caused them to suffer serious mental anguish. This is sufficient to state a cause of action for loss of sepulcher (see Rugova, 132 AD3d at 231).
NYU also contends that it is immune to civil suits because it acted in good faith under the Gift Act. The Uniform Anatomical Gift Act (the "UAGA") of 1968 was promulgated to bring uniformity among state laws regulating organ donation (Colavito v New York Organ Donor Network, Inc., 8 NY3d 43, 53 [2006]). "With minor variation, New York codified the UAGA in 1970 as Public Health Law article 43 (L 1970, ch 466), describing who may be a donor or donee of an anatomical gift, and how a gift may be executed or revoked" (id.). Similar to the common law obligation to notify next of kin of a death that gives rise to a cause of action for loss of sepulcher, the Gift Act imposes various statutory obligations regarding notification of next of kin and authorization of the anatomical gift (see e.g., Public Health Law § 4301 [2][a], [3], [4], 4306-b).
Among these, Public Health Law § 4306-b, entitled "Withdrawal of life-sustaining treatment" provides that where a prospective donor's donation status has not been ascertained, the hospital "shall not withdraw any measures that are necessary to maintain the medical suitability of the part until the procurement organization has had the opportunity to advise the applicable persons as set forth in section forty-three hundred one of this article of the option to make an anatomical gift, has documented or acted upon that decision, or has ascertained that the individual expressed a contrary intent" (Public Health Law § 4306-b). Assuming, arguendo, that the Gift Act applies here, which the parties dispute, Defendant LiveOnNY acted as the procurement organization in connection with the removal of Decedent's organs. Thus, pursuant to Public Health Law § 4306-b, LiveOnNY had an obligation to advise the persons indicated in § 4301 of the option to make an anatomical gift, to document or act upon that decision, or ascertain that the individual expressed a contrary intent. The hospital was not permitted to withdraw life-sustaining treatment until LiveOnNY fulfilled this obligation.
Section 4301 of the Public Health Law, entitled "Persons who may execute an anatomical gift," delineates a list of ten individuals who may legally authorize an anatomical gift in the absence of a gift authorization executed by the decedent (Public Health Law § 4301 [2]). The ten individuals indicated by the statute are as follows:
(i) the person designated as the decedent's health care agent under article twenty-nine-C of this chapter, subject to any written statement in the health care proxy form,
(ii) the person designated as the decedent's agent in a written instrument under article forty-two of this chapter, subject to any written statement in the written instrument,
(iii) the spouse, if not legally separated from the patient, or the domestic partner,
(iv) a son or daughter eighteen years of age or older,
(v) either parent,
(vi) a brother or sister eighteen years of age or older,
(vii) an adult grandchild of the decedent,
(viii) a grandparent of the decedent,
(ix) a guardian of the person of the decedent at the time of his or her death, or
(x) any other person authorized or under the obligation to dispose of the body.
(Public Health Law § 4301 [2][a][i]-[x]).
The ten categories of individuals authorized to make an anatomical gift are listed in order of priority and "[a]n anatomical gift may not be made by a person listed in subdivision two of this section if (a) a person in a prior class is reasonably available" or "(b) the person proposing to make an anatomical gift knows of a refusal or contrary indications by the decedent, including that an anatomical gift is contrary to the decedent's religious or moral beliefs" (Public Health Law § 4301 [3][a][emphasis added]). Hence, an individual of a lower priority is not authorized to make an anatomical gift if an individual of a higher class is "reasonably available." This necessarily imposes an obligation on the authorizing individual to ascertain whether an individual of a higher class is "reasonably available." This obligation is reiterated in the New York Administrative Code, which provides that consent or refusal for an anatomic gift "need only be obtained from any person in the highest priority class available when persons in prior classes have been sought with due diligence and are not available at the time of death" (Department of Health Regulations [10 NYCRR] § 405.25).[FN2]

The Gift Act further provides that a "donee" "shall not accept the gift . . . where an anatomical gift is not properly made pursuant to this section" (Public Health Law § 4301 [5][b]). "Donee" under the statute means "an individual or entity authorized to accept an anatomical gift pursuant to section forty-three hundred two of this article" (Public Health Law § 4300 [6]), which includes a hospital (Public Health Law § 4302 [1][a]). These statutes taken together impose obligations on the procurement organization, the authorizing individual and the hospital receiving the gift to make reasonable efforts to notify a decedent's next of kin of the death or impending death and ensure that the anatomical gift was properly authorized and that the anatomical gift was "properly made."
The Gift Act immunity provision on which NYU relies is set forth as follows under Public Health Law § 4306 (3)(a)(i):
A person who acts in good faith in accord with the terms of this article or with the anatomical gift laws of another state, is not liable for damages in any civil action or subject to prosecution in any criminal proceeding for his or her act.
(Public Health Law § 4306 [3][a][i]). To benefit from the immunity provision, a party must demonstrate that it acted in "good faith." Whether a party acted in good faith is a question of fact, generally addressed at trial (see Gottwald v Sebert, 40 NY3d 240, 255 [2023][questions of good faith "appropriately left for a jury"]; Hirsch v Jones, 191 NY 195, 199 [1908]["Under these circumstances the good faith of the directors was so obviously a question of fact as to exclude serious discussion"]).
Notably, the enactment of the Gift Act did not obviate the common law right of sepulcher, which has been affirmed after passage of the Gift Act (see Melfi, 64 AD3d at 26; Rugova, 132 AD3d at 220). The notification and authorization obligations that give rise to a cause of action for loss of sepulcher are separate and apart from the statutory obligations established by the Gift Act. Nevertheless, a jury could find that a party that willfully or recklessly neglected either of these duties did not act in good faith. At this stage of the litigation, [*6]absent any discovery, it is unclear what, if any, efforts Defendants made to locate the Decedent's next of kin prior to or after her death. NYU has not answered the amended complaint, there has been no discovery, and there is no evidence before the court regarding what information or records were conveyed to NYU in connection with the anatomical gift or to what extent NYU verified the gift was "properly made" before it accepted the gift. Whether NYU acted in good faith and whether it reasonably relied on the authorization provided by Bellevue are questions of fact that must be resolved at trial. NYU's assertion that Plaintiff's claims are refuted by documentary evidence because a police report "expressly indicated that the decedent did 'not possess any form of ID preventing identification at this time'" is unpersuasive. A police report does not qualify as documentary evidence for the purpose of CPLR § 3211 (a)(1) and, in any event, the police report only raises additional questions regarding what identifying information was on Decedent's person when she was taken to Bellevue. As such, dismissal of the cause of action for loss of sepulcher is premature.
The motion to dismiss the causes of action for violation of religious beliefs, intentional infliction of emotion distress, gross negligence and the request for punitive damages are similarly premature due to the lack of discovery. At this stage, it remains unclear whether any Defendant ascertained whether organ removal was against Decedent's religious belief prior to authorizing and executing the anatomical gift and it remains to be seen what other pertinent information NYU may have disregarded regarding Decedent. Plaintiffs' claim for IIED arguably relates back to the original complaint and cannot be dismissed at this stage absent discovery (Stanger v Shoprite of Monroe, NY, 180 AD3d 408, 409 [1st Dept 2020]). Finally, punitive damages are available for loss of sepulcher (Melfi, 64 AD3d at 41-43). Affording Plaintiffs the benefit of every favorable inference, the court finds that the facts as alleged fit within a cognizable legal theory, necessitating the denial of NYU's motion pursuant to CPLR §3211 (a)(7) (see JF Capital Advisors, 25 NY3d at 764). Accordingly, as Plaintiffs' allegations — accepted as true — state a cognizable legal theory for relief, NYU's motion is denied.
B. Plaintiff's Cross-Motion for Summary Judgment
Pursuant to CPLR § 3212 (a), "[a]ny party may move for summary judgment in any action, after issue has been joined" [emphasis added]). The requirement that a motion for summary judgment may not be made before issue is joined must be "strictly adhered to" (City of Rochester v Chiarella, 65 NY2d 92, 101 [1985][internal citations omitted]). Issue is joined when a defendant interposes an answer or separate counterclaim against the plaintiff (CPLR § 3011). Whereas NYU has not filed an answer or counterclaims in this action, issue has not been joined. At this juncture, discovery has not yet commenced, and significant issues of fact remain unresolved, including the veracity of the documents in question and the factual basis underlying the claims. The burden of producing evidentiary proof in admissible form sufficient to require a trial of material questions of fact lies with the party opposing a motion for summary judgment (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). Given that discovery is incomplete and depositions are outstanding, Plaintiffs' motion for summary judgment is denied as premature (see Mason v City of New York, 121 AD3d 468 [1st Dept 2014]; see also Blech v West Park Presbyt. Church, 97 AD3d 443 [1st Dept 2012]). The court recognizes, as Plaintiffs argue, that it has the authority to convert a pre-answer motion to dismiss into a motion for summary judgment when the issues presented involve a purely legal question, but that is not the circumstance here.
C. Defendant Kervens Louissaint's Motion to Dismiss (Seq. 003)
In a separate motion, Louissaint moves pursuant to CPLR § 3211 (a) to dismiss the amended complaint as against him for failure to state a cause of action. Louissaint is the Senior Vice President Chief Clinical Officer of LiveOnNY. In May 2022, Louissaint was LiveOnNY's Vice President of Clinical Services. In relevant part, the amended complaint alleges that Louissaint and LiveOnNY coordinated the dissection, harvesting, and removal of Decedent's organs, aware that Decedent was an unidentified patient, failed to take reasonable steps to identify Decedent, was aware that there was a piece of paper on Decedent's person with a name written on it but chose to ignore it, failed to take Decedent's fingerprints, and authorized the dissection, removal, and harvesting of her organs without any consent (NYSCEF Doc No. 33, amended complaint ¶¶ 83-103). Plaintiffs also separately allege, inter alia, that Louissaint was negligent, reckless, and careless in failing to identify Decedent, failing to conduct searches for Decedent's name, failing to notify Decedents' next of kin (id. ¶ 135).
"A director or officer of a corporation does not incur personal liability for its torts merely by reason of [their] official character, and thus, cannot be liable for torts attributable to the corporation if [they] did not participate in and was not connected with the acts in any manner" (N. Shore Architectural Stone, Inc. v Am. Artisan Const., Inc., 153 AD3d 1420, 1422 [2d Dept 2017]). "However, a corporate officer who participates in the commission of a tort may be held individually liable, regardless of whether the officer acted on behalf of the corporation in the course of official duties and regardless of whether the corporate veil is pierced" (id.). Here, the amended complaint pleads the same allegations jointly against LiveOnNY as against Louissaint (see amended complaint ¶¶ 83-103). The only allegations asserted against Louissaint that are not jointly asserted against LiveOnNY are conclusory (id. ¶ 135). There is no allegation that Louissaint acted outside the scope of his employment at any time, nor are there allegations of any specific action taken by Louissaint. Aside from serving as an officer of LiveOnNY, it is unclear what, if any, role Louissaint is alleged to have taken in the events that constitute the subject of this action. This is insufficient to state a cause of action against Louissaint in his individual capacity. As such, the motion to dismiss the complaint as against Louissaint is granted.
Accordingly, it is
ORDERED that defendant NYU's motion to dismiss is denied (Motion Seq. 002); and it is further
ORDERED that NYU is directed to serve an answer to the complaint within 20 days after service of a copy of this order with notice of entry; and it is further
ORDERED that Plaintiffs' cross-motion for summary judgment is denied; and it is further
ORDERED that the motion of defendant Kervens Louissaint (Motion Seq. 003) to dismiss the complaint herein is granted and the complaint is dismissed in its entirety as against said defendant, with costs and disbursements to said defendant as taxed by the Clerk of the Court, and the Clerk is directed to enter judgment accordingly in favor of said defendant; and it is further
ORDERED that the action is severed and continued against the remaining defendants; and it is further
ORDERED that the caption be amended to reflect the dismissal and that all future papers filed with the court bear the amended caption; and it is further
ORDERED that counsel for the moving party shall serve a copy of this order with notice [*7]of entry upon the Clerk of the Court and the Clerk of the General Clerk's Office, who are directed to mark the court's records to reflect the change in the caption herein; and it is further
ORDERED that such service upon the Clerk of the Court and the Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in the Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases (accessible at the "E-Filing" page on the court's website).
ORDERED that counsel are directed to appear for a settlement conference in Room 320, 80 Centre Street, New York, on October 8, 2024, at 11:30 a.m.
DATE 8/21/2024
HASA A. KINGO, J.S.C.

Footnotes

Footnote 1:Except where otherwise noted, the facts are recited here as alleged in the amended complaint and are accepted as true for the purposes of the motion, as required on a motion to dismiss pursuant to CPLR § 3211(a)(7). 

Footnote 2:The priority classes under 10 NYCRR § 405.25 are (i) the spouse; (ii) a son or daughter 18 years of age or older; (iii) either parent; (iv) a brother or sister 18 years of age or older; or (v) a guardian of the person of the decedent at the time of his/her death.